WILMA KLESSER *and* CHARLES KLESSER

*v.*

RENE W. STONE, R. J. AVERY,

T. R. LEE FIT MANAGEMENT, INC., *a corporation*

KAY KAREN MCLAIN

*v.*

CHARLES KLESSER, WILMA KLESSER

*and* RENE W. STONE

RENE W. STONE

*v.*

CHARLES KLESSER *and* WILMA KLESSER

(No. 13216)

Submitted September 25, 1973. Decided December 18, 1973.

*William C. Field, DiTrapano, Mitchell, Lawson & Field, William E. Mohler* for Klesser.

*Barber & DeBolt, Timothy N. Barber and Jack W. DeBolt* for McLain.

*John T. Poffenbarger, Jackson, Kelly, Holt & O'Farrell, Robert L. Elkins and William F. Dobbs, Jr.,* for Stone.

SPROUSE, JUSTICE:

This is a consolidated civil action arising out of an automobile collision. Charles Klesser and Wilma Klesser, husband and wife, are plaintiffs against Rene W. Stone, defendant. Kay McLain is a plaintiff against Stone and the Klessers. The defendant Stone filed a separate action against the Klessers, but not against McLain who was his guest passenger. There were other defendants, but they received a directed verdict in their favor and are not

involved in this appeal. The case, after consolidation, was tried in the Common Pleas Court of Kanawha County.

The jury returned a verdict for the plaintiff Wilma Klesser in the amount of $2,500.00 and for Charles Klesser in the amount of $1,000.00—both against the defendant Rene W. Stone. Kay McLain received a jury verdict of $7,500.00 against the defendant Stone. The verdicts were appealed to the Circuit Court of Kanawha County, which set them aside on the ground that the trial court improperly communicated to the jury without the knowledge of the parties or counsel for either party. The plaintiffs below appeal that ruling of the circuit court.

The collision involved was between an automobile operated by Wilma Klesser, which she and her husband jointly owned, and an automobile operated by Rene W. Stone in which Kay McLain was a passenger. Mrs. Klesser was operating her automobile in a southerly direction on Broad Street in Charleston, West Virginia. Rene W. Stone was proceeding easterly on Virginia Street. The intersection of Broad and Virginia Streets is controlled by electric traffic control devices commonly referred to as "red" and "green" lights.

Each of the drivers testified that, as they approached the intersection and entered into it, their respective traffic lights were green. The collision occurred near the center of the intersection. Testimony reflected each car was travelling at a normal rate of speed. There was evidence as to the parts of the vehicles involved in the impact, their relative position after impact, and the extent of the damages to the vehicles. This comprised the evidence on the question of liability. The case was submitted to the jury upon the issues of the negligence and contributory negligence of the respective parties and on questions of damages. The essential jury problem in ascertaining liability was determining who proceeded against the light through the intersection. The jury retired to deliberate and the trial judge proceeded with

the trial of another and unrelated case as soon as the jury retired.

After some deliberation and during the trial of the different case, the bailiff was requested by a juror to deliver a written communication to the judge. The written communication was as follows:

> "Your Honor: We cannot agree on who ran the red light. Can we place the liability on the party that we feel had the last chance to avoid the accident."

Without notifying counsel or calling the jury into open court, the judge made an oral reply to the bailiff and directed him to communicate his answer to the jury. The bailiff followed the judge's instructions.

After the verdict was returned, and in the presence of the jury, the trial judge stated upon the record his response to the jury's question, which was:

> "The Court could not answer any questions or give you any further information."

The court then inquired of the jury if that was the message they received, and the jury answered affirmatively. The trial court overruled a motion by counsel for the appellee that the court inquire of the jury if they determined who ran the red light.

The appellee cross-assigns three errors: (1) The verdicts rendered in favor of Charles Klesser and Wilma Klesser are excessive and should be set aside; (2) the trial court erred in giving Klessers' Instruction No. 4 dealing with recoverable damages by Charles Klesser; and (3) the trial court erred in admitting certain medical testimony in behalf of Kay Karen McLain because it was not of a character as would warrant a reasonable inference that the injury complained of was proximately caused by the negligent act of the defendant. The circuit court dismissed these points as being without merit. We agree with the circuit court that these assignments of error are all without merit.

The primary question presented for decision on this appeal is whether the incident of communication between the trial judge and the jury out of the presence of all parties and counsel was prejudicial error, and it is a question of first impression in this jurisdiction.

"As a general rule all communications between the trial judge and the jury, after submission of the cause, must take place in open court and in the presence of, or after notice to, the parties or their counsel." 89 C.J.S., *Trial*, Section 473, p. 115. A more amplified version of the general rule appears in 53 AM. JUR., *Trial*, Section 904, pages 649-50:

> "All communications between the judge and jury, including any additional instructions given after their retirement, should be given in open court. * * * The judge may not hold private conversations with jurors at any stage of a trial. After submission of the cause, the judge may not enter the jury room and there, in the absence of the parties and their counsel, communicate with the jurors or advise them of their duties; communicate with them through others, give instructions by telephone, or send a written instruction or communication to the jury room, unless with consent of counsel. Any form of communication between the judge and the jury after the jury have retired to deliberate upon their verdict, unless made in the presence of or after notice to the parties, is improper. Any such action is improper even if done at the request of the jurors. * * * "

Despite the existence of a neatly categorized general rule, the courts have been truly diverse in their rulings on this important point of procedural law. The diversity is attributable not only to varying factual differences in various cases, but also to varying judicial standards, a fact apparent from decisions which reach different results on the same or similar facts.

A brief review of how the problem of such communication between the judge and the jury has been handled

in various situations in different jurisdictions presents some perspective on the problem.

Numerous decisions have held communications between the judge and the jury, similar to the one involved in this case, not to constitute prejudicial error, where: A judge, in the absence of counsel, and through the bailiff told the jury that a verdict including attorney's fees was improper, and subsequently instructed them on the proper form of the verdict, *Brown v. Barr,* 269 Ala. 497, 113 So. 2d 924; a judge, after an unsuccessful attempt to locate counsel, told the jury that he did not remember the testimony that they requested, *Haven v. Town of Brimfield,* 345 Mass. 529, 188 N.E.2d 574; the judge, in the absence of counsel, answered a question instructing the jury on a phase of the case, *Sherman v. Metropolitan Transit Authority,* 345 Mass. 777, 189 N.E.2d 526; the trial court, in reply to a note from the jury, sent a message by the clerk to the jury concerning the form of the verdict, *Wilson v. Hartley,* 365 Mich. 188, 112 N.W.2d 567; a Nebraska trial court performed a mathematical computation for the jury and the Supreme Court of Nebraska held that, although it was error, it was without prejudice and not reversible, *Barry v. Moore,* 172 Neb. 57, 108 N.W.2d 401; in Minnesota a trial judge instructed a jury in the absence of counsel that there were no presumptions from the absence of one of the witnesses, *Zuber v. Northern Pacific Railway Company,* 246 Minn. 157, 74 N.W.2d 641.

Conversely, in other jurisdictions it was held that the trial judge committed reversible error, where he: Communicated to the jury through the bailiff that the jury's request for a rereading of the testimony could not be granted because of the illness of the court reporter, *Halada v. Venice Lake Park, Inc.,* 132 Cal. App. 2d 788, 283 P.2d 42; committed other errors and replied to a message from the jury, in the absence of counsel, that they would have to use their own recollection concerning testimony, *Guzzi v. Jersey Central Power & Light Company,* 36 N. J.

Super. 255, 115 A.2d 629; instructed a marshal to advise a jury negatively concerning an inquiry as to whether the plaintiff was receiving workmen's compensation benefits, *Snyder v. Lehigh Valley Railroad Company*, 245 F.2d 112 (3rd Cir.); in reply to their question advised jurors through the bailiff that plaintiff was receiving some workmen's compensation benefits, *Peters v. State Industrial Accident Commission*, 236 Ore. 27, 386 P.2d 800; wrote to the jury, after their request for testimony, that they "must remember the testimony as given by the witnesses on the witness stand", *Argiro v. Phillips Oil Company*, 422 Pa. 433, 220 A.2d 654; instructed the court crier by telephone to write on the bottom of a note from the jury that they should continue deliberations, *Kersey Manufacturing Company v. Rozic*, 422 Pa. 564, 222 A.2d 713; replied to the jury in writing, in answer to their question as to whether the attorneys represented the insurance company or were personal attorneys, that the attorneys represented their clients but that the jury should consider only matters discussed in the judge's charge, *Yarsunas v. Boros*, 423 Pa. 364, 223 A.2d 696; told the foreman of the jury in his chambers in response to the question concerning damage that the jurors could read instructions given and that the damage instruction contained a complete answer to the foreman's inquiry, *Hartgrove v. Chicago, B. & Q. R. Co.*, 358 Mo. 971, 218 S.W.2d 557.

A text writer, perhaps somewhat inadequately, summarizes the effect of these decisions:

> "[Communication] is regarded as ground for a new trial or as constituting reversible error, irrespective, according to many courts, of the question of actual prejudice resulting therefrom *and provided, according to others, the misconduct is not harmless.* * * * " 53 AM. JUR., *Trial,* Section 904, page 650.

The former type of ruling is sometimes referred to by some text writers as the "strict" rule, but a comparison of the cases reveals no unified decisions which form a

majority or minority rule. The cases rather have been decided on a case-by-case basis.

Cutting through the morass of judicial decisions to the essential issue, it is simply whether any communication between the judge and the jury out of the presence of counsel is reversible error in and of itself, or whether additionally a showing of prejudice is necessary.

The better conduct of a trial judge would be, of course, not to communicate with the jury or jurors outside the presence of parties or counsel. We would not want to be in the position, however, of decreeing in advance that all formalities or pleasantries between a judge and a jury are *ipso facto* reversible error without reviewing the facts concerning each communication.

Courts are a human institution, and we cannot expect mechanical perfection even in such vital areas as jury consideration. Errors will appear in every trial. It is fundamental that to eradicate a completed adjudication of rights by granting a new trial the errors complained of must be prejudicial.

In order for a litigant's case to be prejudiced in this context, however, it is not necessary to prove a specific and demonstrable injury, damage or injustice to his case. A litigant has a right to an atmosphere of impartiality—uncluttered procedures where justice is administered not only free from any suspicions of taint, but also free from a confused or malfunctioning machinery of justice. Where there is even a possibility of confusion or malfunction of our judicial system, litigants, either in person or by counsel, have a right to be present and to be heard. Our system recognizes that neither litigants, lawyers, judges nor jurors are perfect and that each principal participant in the mechanics of trial must be openly and uninhibitedly receptive to receiving the assistance of others in insuring a fair trial. This is true throughout the conduct of the trial and perhaps with greater force in the cumulative jury

deliberation. If there is a communication to be had between the jury and the judge or vice versa, and it appears there is even a possibility that one of the parties might be prejudiced, it is essential that the party litigants be aware of that communication in order that they have the opportunity not only to protect their direct rights, but to assist the court in achieving a fair determination of the issues and in maintaining the appropriate aura of dignity and fairness. A trial by jury is one of the bedrocks of democracy and must be kept free from all improper influences and from the appearance of such influence.

A judge presiding over a jury trial is unique. The jury, as well as the litigants, look upon him as representing the public good—the state. It is for these reasons that a trial court in communicating with a jury during its deliberations, must exercise the ultimate in judicial statesmanship. It is for these reasons that prejudice is more easily found where appropriate judicial restraint in this regard has not been applied.

The jury here was confused about the issue of primary negligence. They sought the trial judge's advice to resolve the confusion. It is obvious from his careful choice of language, he attempted not to influence the jury's decision. It is equally clear, however, that the parties and their counsel were available for consultation at the time the communication was received by the trial judge, and that they may well have had motions to make or suggestions to offer had they been consulted.

It is impossible to say that the communication sent by the judge to the jury had no effect. It was designed to be innocuous, and appeared to be innocuous and non-persuasive; yet, in view of the question it answered, it may have had some unpredictable meaning to the jury. The communication by the trial court to the jury in the absence of the litigants and their counsel, therefore, was prejudicial error, and the circuit court was correct in so finding.

Appellee further contends that the judge to jury communication was a denial of due process of law; that the trial judge should have provided the jury guidance after they indicated their confusion concerning the issue of primary negligence; that the judge's response was an improper instruction; that the court should have asked the jury whether they had decided who proceeded improperly through the traffic light; and that the verdict was improper because decided on issues not arising on the pleadings. In view of our decision on the issue of communication between the judge and the jury, it is not necessary to further consider these questions.

For reasons stated in this opinion, the judgment of the Circuit Court of Kanawha County is affirmed.

*Affirmed.*