480 S.E.2d 516

**Melody A. KING, Plaintiff Below, Appellant,**

v.

**Amy Danielle FERGUSON and Frank Sisson, Defendants Below, Appellees.**

No. 23170.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 24, 1996.

Decided Nov. 15, 1996.

Raymond G. Musgrave, Musgrave & Musgrave, Point Pleasant, for Appellant.

Randall L. Trautwein, Levy, Trautwein & Pancake, Huntington, for Appellees.

PER CURIAM:

This is an appeal[1] by plaintiff below and appellant herein, Melody A. King, from a denial of her motion for a new trial. The plaintiff filed suit against the defendants, Amy Danielle Ferguson and Frank Sisson, for damages incurred as a result of an automobile accident. The case was tried before a jury in the Circuit Court of Mason County. The jury returned a verdict for the plaintiff in the amount of $2,025.05. The trial court assessed jury costs against the plaintiff, as a result of the jury award being substantially less than the last settlement offer by the defendants. The plaintiff moved for a new trial which was denied. The plaintiff now appeals the denial of her motion for a new trial and the assessment of jury costs against her.

## I.

## FACTUAL AND PROCEDURAL HISTORY

The plaintiff was driving along a highway in Mason County on June 27, 1991, when her vehicle was rear-ended by a car being driven by Amy Danielle Ferguson.[2] The plaintiff was treated for minor injuries in the emergency room at Pleasant Valley Hospital and released. The record indicates the plaintiff was able to immediately return to her employment as a home health care aide, and she regularly worked sixty hours a week. In 1992, the plaintiff filed the instant lawsuit seeking to recover damages stemming from the accident with Ms. Ferguson. The case was tried before a jury on February 27, 1995. The defendants admitted liability for the accident, but challenged most of the damages

attributed to the same. The jury returned a verdict for the plaintiff, awarding her $2,025.05.[3] The plaintiff moved for a new trial on the grounds that the verdict award was manifestly inadequate. The trial court denied the motion for a new trial. The trial court also assessed jury costs against the plaintiff after finding the defendants made a final settlement offer of $24,000, which was rejected by the plaintiff. The plaintiff now asks this Court to reverse the trial court's order denying her a new trial and assessing jury costs against her.

## II.

## STANDARD OF REVIEW

As a general matter, we review a trial court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation*, 193 W.Va. 119, 454 S.E.2d 413 (1994) (Cleckley, J., concurring), *cert. denied*, —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995). Nevertheless, questions of law are subject to a *de novo* review. *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). We held in Syllabus Point 1 of *Kaiser v. Hensley*, 173 W.Va. 548, 318 S.E.2d 598 (1983) that "[i]n an appeal from an allegedly inadequate damage award, the evidence concerning damages is to be viewed most strongly in favor of the defendant." However, in Syllabus Point 3 of *Kaiser, supra*, we held that:

" 'Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside.' " (Citations omitted).

1. The Honorable Arthur M. Recht resigned as Justice of the West Virginia Supreme Court of Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. The car driven by Ms. Ferguson was owned by the defendant Frank Sisson, who was not in the vehicle at the time of the accident.

3. The verdict award was distributed as follows: (1) medical expenses—$792.05; (2) lost income—$233.00; and (3) mental distress—$1,000.00.

We indicated in Syllabus Point 3 of *Walker v. Monongahela Power Company,* 147 W.Va. 825, 131 S.E.2d 736 (1963):

> "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true."

*See also In re State Public Bldg. Asbestos Litigation,* 193 W.Va. at 125, 454 S.E.2d at 419. Additionally, in Syllabus Point 2 of *Young v. Duffield,* 152 W.Va. 283, 162 S.E.2d 285 (1968), *overruled on other grounds, Tennant, supra,* this Court further provided that "[i]t takes a stronger case in an appellate court to reverse a judgment awarding a new trial than one denying it and giving judgment against the party claiming to have been aggrieved."

### III.

### EVIDENCE OF PLAINTIFF'S INJURIES

■ The first issue to be taken up is the plaintiff's contention that evidence proffered by her regarding three injuries allegedly attributed to the accident was uncontroverted. The injuries were: (1) migraine headaches, (2) temporomandibular joint dysfunction, and (3) cervical strain. We discuss each injury separately.

### A.

#### *Migraine Headaches*

■ The plaintiff introduced the videotaped deposition of Daniel R. Black, D.O., who testified the plaintiff complained of having migraine headaches associated with the accident. The defendants countered this testimony with the videotaped deposition of Robert J. Thompson, M.D., a neurologist, who testified it was his opinion that the plaintiff's migraine headaches were not attributed to the automobile accident. We fail to comprehend the plaintiff's argument on

appeal that the issue of her migraine headaches was not contested. The jurors were confronted with the testimony of Dr. Black, who indicated the accident caused the migraine headaches; on the other hand, they were given compelling testimony by Dr. Thompson that the accident had no connection whatsoever with the migraine headaches. This issue presented a classic factual dispute that had to be resolved by the jury. In Syllabus Point 1 of *Evans v. Farmer,* 148 W.Va. 142, 133 S.E.2d 710 (1963), we stated that "[i]t is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses is conflicting[.]" *See* Syl. Pt. 1, *Ashland Oil, Inc. v. Donahue,* 164 W.Va. 409, 264 S.E.2d 466 (1980). In view of the character of the evidence presented on the issue of the plaintiff's migraine headaches and the latter rule, we cannot conclude that the jury improperly considered this issue.[4] The trial court, in other words, was absolutely correct in not disturbing the jury's resolution of this issue on the motion for new trial by the plaintiff.

### B.

#### *Temporomandibular Joint Dysfunction*

Next, the videotaped deposition of Winfield C. John, III, M.D., oral and maxillofacial surgeon, was presented by the plaintiff to address the issue of her temporomandibular joint dysfunction. Dr. John testified the plaintiff was suffering pain associated with temporomandibular joint dysfunction. However, during cross-examination of Dr. John, it was brought out that the plaintiff did not complain of jaw pain until August of 1994. Dr. John concluded he would have expected complaints before that time and, therefore, the exact cause of the problem was "more unclear." The defendants introduced the videotaped deposition of John A. Cheek, M.D., an oral surgeon, who testified that the plaintiff was suffering from temporomandibular internal derangement with secondary masticatory myofascial pain. However, Dr.

---

4. The jury, in fact, awarded plaintiff $1,000 for past mental distress. The verdict form did not define mental distress, therefore, we do not know if in fact the jury totally disbelieved the plaintiff's evidence as to her migraine headaches.

Cheek added that in view of the fact that the plaintiff did not complain of jaw pain until three years after the accident, it was his opinion the accident did not cause the problem. Additionally, the defendants, during cross-examination of the plaintiff, had her admit that while she had been regularly seeing three doctors since the accident, she never informed any of them that she was suffering jaw pain. The issue of whether the plaintiff's jaw pain was caused by the accident was a question of fact. Because the evidence concerning the cause of her jaw pain was disputed, the question cannot be ruled on as a matter of law. The law is well settled concerning the jury's province to resolve conflicts of facts. In Syllabus Point 4 of *Young v. Ross,* 157 W.Va. 548, 202 S.E.2d 622 (1974), we stated:

> " 'It is the peculiar and exclusive province of a jury to weigh the evidence and to resolve questions of fact when the testimony of witnesses regarding them is conflicting and the finding of the jury upon such facts will not ordinarily be disturbed.' Syllabus Point 2, *Skeen v. C and G Corporation,* 155 W.Va. 547, 185 S.E.2d 493 (1971)."

*See Rhodes v. National Homes Corp.,* 163 W.Va. 669, 263 S.E.2d 84 (1979); *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983), *cert. denied,* 469 U.S. 981, 105 S.Ct. 384, 83 L.Ed.2d 319 (1984); *Prager v. Meckling,* 172 W.Va. 785, 310 S.E.2d 852 (1983). The verdict form indicates the jury resolved the factual conflicts regarding the plaintiff's jaw pain against her. The conflicting evidence on this issue did not present a compelling case for the trial court to intervene and disturb the jury's. We see no justification for looking past the trial court's ruling.

### C.

#### *Cervical Strain*

■ The plaintiff introduced the videotaped depositions of Dr. Black and S. Douglas Deitch, M.D., a neurologist, to address the issue of cervical strain. Both physicians testified the plaintiff had back impairment due to the accident. Dr. Black rated the impairment at five percent permanent partial disability, while Dr. Deitch rated the impairment at ten percent permanent partial disability. During cross-examination of both physicians, each testified they released the plaintiff to return to work without any restrictions. The defendants introduced the videotaped depositions of Dr. Thompson, Dr. Cheek, and Paul Bachwitt, M.D., an orthopedic surgeon, all of whom testified that any cervical muscle strain associated with the automobile accident should have ended within weeks of the accident. Dr. Bachwitt testified specifically that he found no objective medical evidence of any abnormality in plaintiff's back and that she suffered no permanent partial disability. During cross-examination, the plaintiff admitted that she continued to play the piano, softball, accordion, saxophone, mow her lawn, go deer hunting, do housework, and make clothing on her sewing machine. As stated in Syllabus Point 3 of *Bourne v. Mooney,* 163 W.Va. 144, 254 S.E.2d 819 (1979), this Court consistently has held:

> "Where the evidence is conflicting and the case is fairly tried under proper instructions the jury verdict will not be set aside unless it is plainly contrary to the weight of evidence or is without any evidence to support it."

*See also* Syl., *Morgan v. Bottome,* 170 W.Va. 23, 289 S.E.2d 469 (1982); Syl. Pt. 1, *Elsey Ford Sales, Inc. v. Solomon,* 167 W.Va. 891, 280 S.E.2d 718 (1981); Syl. Pt. 2, *Department of Highways v. Delta Concrete Co.,* 165 W.Va. 398, 268 S.E.2d 124 (1980); Syl. Pt. 2, *Rhodes v. National Homes Corp.,* 163 W.Va. 669, 263 S.E.2d 84 (1979). The jury obviously ruled against the plaintiff on her claim of cervical strain. We see no reason to disturb the jury's finding nor the trial court's denial of plaintiff's motion for a new trial on this issue.

### IV.

### PAIN AND SUFFERING AND LOST WAGES

■ The second issue raised by plaintiff is that the trial court should have granted her motion for a new trial because the jury failed to compensate her for (1) pain and suffering and (2) loss of past and future

earning capacity. We will discuss each issue separately. To start, this Court has held in Syllabus Point 2 of *Sullivan v. Lough,* 185 W.Va. 260, 406 S.E.2d 691 (1991):

> " ' "A verdict of a jury will be set aside where the amount thereof is such that, when considered in light of the proof, it is clearly shown that the jury was misled by a mistaken view of the case." Syllabus Point 3, *Raines v. Faulkner,* 131 W.Va. 10 [48 S.E.2d 393 (1947) ].' Syllabus Point 2, *Keiffer v. Queen,* 155 W.Va. 868, 189 S.E.2d 842 (1972)."

As stated in Syllabus Point 2 of *Gebhardt v. Smith,* 187 W.Va. 515, 420 S.E.2d 275 (1992), we have consistently held:

> " ' " 'Where a verdict does not include elements of damage which are specifically proved in uncontroverted amounts and a substantial amount as compensation for injuries and the consequent pain and suffering, the verdict is inadequate and will be set aside.' " ' " (Citation omitted).

*See also* Syl. Pt. 1, *Kaiser v. Hensley, supra;* Syl. Pt. 2, 173 W.Va. 548, 318 S.E.2d 598, *Maynard v. Napier,* 180 W.Va. 591, 378 S.E.2d 456 (1989) (per curiam). The defendants take the position that the jury, in fact, awarded the plaintiff compensation for pain and suffering as part of its verdict award of $1,000 for mental distress. In personal injury litigation, damages fit under two broad categories: (1) economic loss and (2) noneconomic loss. Our concern is with the latter category. In *Robinson v. Charleston Area Medical Center, Inc.,* 186 W.Va. 720, 725, 414 S.E.2d 877, 882 (1991), we said that a noneconomic loss was defined as "losses including, but not limited to, pain, suffering, mental anguish and grief." (Citation omitted). Clearly, the award of mental distress in this case was for a noneconomic loss and, as such, covered pain and suffering. The defendants cite our decision in *Maynard* as directly on point with the issue herein. In *Maynard,* the appellants argued their jury award of $3,136.50, after payment of medical expenses, included only $9.50 for pain, suffering, and future medical expenses and, since liability was admitted by the appellees, the award was insufficient as a matter of law. We disagreed with the appellants. We noted in *Maynard* that the evidence permitted the conclusion that Ms. Maynard quickly recovered from the injuries she sustained as a result of her automobile accident. Ms. Maynard was able to participate in school, sports, and recreational activities within a few weeks after the accident. We also found in that case that the only elements of damage that were specifically proven in uncontroverted amounts were the medical expenses which were incurred shortly after the accident. The jury awarded $681.50 for these expenses. The special damages for chiropractic and medical services were controverted by the appellees, not on liability grounds, but rather on the ground that the costs were not incurred as a result of the accident. The jury awarded unspecified damages of $2,455. We found that once the uncontroverted medical expenses were subtracted from the award, a substantial remainder was left as compensation for Ms. Maynard's injuries and consequent pain and suffering. We concluded that the jury award of damages was not inadequate. In the instant proceeding, we are satisfied that the plaintiff was compensated for pain and suffering, and that the amount awarded was adequate.

Next, the plaintiff called James Rossi, CPA, to address the issue of alleged loss of past and future earnings. In Syllabus Points 9 and 10 of *Jordan v. Bero,* 158 W.Va. 28, 210 S.E.2d 618 (1974), we stated:

> "9. The permanency or future effect of any injury must be proven with reasonable certainty in order to permit a jury to award an injured party future damages.
>
> "10. Future damages are those sums awarded to an injured party for, among other things: (1) Residuals or future effects of an injury which have reduced the capability of an individual to function as a whole man; (2) future pain and suffering; (3) loss or impairment of earning capacity; and (4) future medical expenses."

Mr. Rossi testified on direct examination that the plaintiff would suffer lost future earnings of $710,196. On cross-examination, Mr. Rossi testified that he was making his calculation based upon plaintiff being one hundred percent disabled. Mr. Rossi stated that, if plaintiff was only five percent disabled, his calcu-

lations would have to be reduced by ninety-five percent; and, if plaintiff was not disabled, she would have suffered zero lost future earnings. Finally, the defendants point out that on redirect examination, Mr. Rossi stated: "As far as what she [plaintiff] may or may not lose in the future, I don't think I'm qualified to give you an opinion." We stated in Syllabus Point 7 of *Jordan:*

> "To form a legal basis for recovery of future permanent consequences of the negligent infliction of a personal injury, it must appear with reasonable certainty that such consequences will result from the injury; contingent or merely possible future injurious effects are too remote and speculative to support a lawful recovery."

In view of the speculative evidence the plaintiff presented on the issue of loss of future earning capacity, we do not believe the jury was arbitrary in refusing to make an award for this. The plaintiff's own expert retracted his opinion on this issue and indicated he was not qualified to address the matter. As to the issue of lost past earnings, on cross-examination the plaintiff admitted that during the three and a half years since the accident she only lost $233 in wages. The jury awarded plaintiff that amount. As to past medical expenses, the plaintiff put on evidence that she incurred medical costs totaling $6,237.10. The jury, however, found that only $792.05 of that cost was attributed to the automobile accident. The defendants did not contest the medical cost evidence relating to the award of $792.05. However, the defendants contested all other medical cost evidence proffered by the plaintiff. In *Lenox v. McCauley*, 188 W.Va. 203, 423 S.E.2d 606 (1992), the appellant contended that the jury's award for past medical costs was inadequate. In that case, which also involved injuries resulting from an automobile accident, the appellant submitted evidence that his medical expenses were $20,-197.66; the jury awarded only $2,537.40 for medical expenses and lost wages. In viewing the evidence most strongly in favor of the appellee, we found the evidence revealed the appellant sustained a minor non-permanent injury. We also found that the appellant's condition improved until he was involved in a subsequent accident. Additionally, many of the appellant's physical and emotional problems existed before the accident with the appellee, and the accident did not appear to have exacerbated the pre-existing problems. Given the conflicting evidence in the case, we found that the jury's award for past medical costs was not inadequate when the evidence was viewed most strongly in favor of the appellee. In the instant proceeding, we are not moved to disturb the jury's award for past medical expenses as inadequate. The defendants gave the jury sufficient evidence to find that the vast majority of the medical expenses proffered by the plaintiff simply were not connected to the accident in this case.

 The plaintiff points out that during deliberations, the jury sent a question to the trial court seeking to know who would pay a·verdict that was against the defendants. The trial court did not answer the question. The plaintiff argues that the jury question establishes that they disregarded the trial court's instructions on the law, and thereby returned a verdict manifestly inadequate. The defendants urge that this issue was waived by the plaintiff because she failed to object to the question or to the trial court's nonresponse below. We held in Syllabus Point 1 of *Klesser v. Stone*, 157 W.Va. 332, 201 S.E.2d 269 (1973):

> "As a general rule, all communications between the trial judge and the jury, after the submission of the case, must take place in open court and in the presence of, or after notice to, the parties or their counsel."

The record in this matter indicates that the communication by the jury to the trial court occurred in open court and in the presence of the parties. The critical factor in this matter goes to the essence of the question that the jury wanted the trial court to answer. We addressed a similar issue in the context of a criminal prosecution. In Syllabus Point 2 of *State v. McClure*, 163 W.Va. 33, 253 S.E.2d 555 (1979), we stated:

> "Where it clearly and objectively appears in a criminal case from statements of the jurors that the jury has failed to comprehend an instruction on a critical ele-

ment of the crime or a constitutionally protected right, the trial court must, on request of defense counsel, reinstruct the jury."

The jury's question in the instant proceeding clearly indicates the jurors had some confusion about their role. It would have been incumbent upon the trial court to reinstruct the jury in an appropriate manner had one or both parties requested the same. However, the record indicates that the plaintiff made no objection or motion for a mistrial with respect to the jury's question. In Syllabus Point 1 of *State Road Commission v. Ferguson*, 148 W.Va. 742, 137 S.E.2d 206 (1964), we stated:

> "Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal."

To preserve the issue of the jury's question to the trial court, it was necessary for the plaintiff to have the record reflect her objections to the trial court in the first instance, so the trial court would have an opportunity to remedy the plaintiff's concerns. This was not done. In Syllabus Point 6 of *State v. Byers*, 159 W.Va. 596, 224 S.E.2d 726 (1976), we indicated that "[t]his Court will not consider an error which is not preserved in the record[.]"

## V.

### ASSESSMENT OF JURY COSTS

Finally, the plaintiff contends it was error for the trial court to assess jury costs against her. The plaintiff argues that to allow a prevailing party to have costs imposed would send a chilling message to citizens injured and seeking legal redress. The issue raised by the plaintiff is governed by Rule 68 of the West Virginia Rules of Civil Procedure. The pertinent language of Rule 68 provides:

> "(a) Offer of Judgment. At any time more than 10 days before the trial begins, a party defending against a claim may serve upon the adverse party an offer to allow judgment to be taken against him for the. money or property or to the effect

specified in his offer, with costs then accrued. . . .

> \* \* \* \* \* \*

> "(c) Offer Not Accepted. . . . If the judgment finally obtained by the [plaintiff] is not more favorable than the offer, the [plaintiff] must pay the costs incurred after the making of the offer[.]"

Contrary to what the plaintiff urges, other jurisdictions have statutes or court rules that are similar to Rule 68. *See Gasperin v. Reeves*, 664 So.2d 1062 (Fla.App. 2 Dist.1995) (holding the trial court erred in failing to enter an order awarding fees and costs to defendant who made a settlement offer which was rejected by plaintiff, and plaintiff's verdict at trial was less than 75 percent of the settlement offer); *Severn v. Sperry Corp.*, 212 Mich.App. 406, 538 N.W.2d 50 (1995) (holding that a party who accepts mediation evaluation may recover actual costs necessitated by rejection of evaluation by opposing party if that party does not succeed in obtaining a more favorable verdict at trial); *Gaston v. Tillery*, 900 P.2d 1012 (Okla.App. 1995) (holding that trial court had no discretion to deny costs to defendant where defendant's offer of judgment was rejected and plaintiff recovered less than the offer); *Uniroyal Goodrich Tire Co. v. Mercer*, 111 Nev. 318, 890 P.2d 785 (1995) (holding that trial judge may make awards of costs, attorney fees, and interest on judgment where there was a pretrial offer of judgment that offeree refused and final judgment resulted in outcome less favorable to offeree); *Hallow v. Filiyaro*, 526 N.W.2d 631 (Minn.App.1995) (holding that rule governing settlement offers is designed to encourage settlement and, if a valid offer is not accepted and judgment entered is less favorable than offer, offeree must pay costs and disbursements of offeror). We have no disagreement with the trial court's assessing jury costs pursuant to Rule 68(c). In fact, a proper application of Rule 68(c) makes it mandatory for trial judges to impose upon plaintiffs costs incurred after a settlement offer wherein a verdict is less favorable than the settlement offer. The defendants argue the plaintiff has waived the right to raise this issue because she did not make a timely objection below. The defen-

dants' position is well taken to the extent that the plaintiff may be said to have argued on appeal that the settlement offer was not made within the applicable time frame of Rule 68(a). *See Hedergott v. Moon,* 678 So.2d 445 (Fla.App. 2 Dist.1996) (holding that settlement offer was not made within time limit set by rule; therefore, award of costs to defendants where verdict was less than settlement offer was improper). The record does not disclose when the settlement offer was made in the instant case. Nor does the record disclose an objection below by the plaintiff challenging the imposition of jury costs on the grounds that the settlement offer was not timely within the meaning of Rule 68(a). We will not consider on appeal an issue not objected to below where the matter concerned is not jurisdictional in character. Syl. Pt. 1, *State Road Commission v. Ferguson, supra.*

## VI.

### CONCLUSION

For the foregoing, the judgment of the Circuit Court of Mason County is affirmed.

Affirmed.

RECHT, J., sitting by temporary assignment.