# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**FILED**

**February 12, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 15-0109** (Jefferson County 14-F-20)

**Cornelius B.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Cornelius B.,[1] by counsel James T. Kratovil, appeals his conviction in the Circuit Court of Jefferson County of one count of sexual abuse by parent, guardian, or custodian; one count of sexual abuse in the first degree; and one count of sexual abuse in the third degree. Petitioner also appeals the circuit court's denial of his post-trial motions. The State of West Virginia, by counsel, Brandon C.H. Sims, responds in support of the circuit court's order. Petitioner replied to the State's response.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On the evening of June 9, 2013, then fourteen-year-old A.H. spent the night with her thirteen-year-old acquaintance and next-door neighbor, J.H. J.H. resided with her mother, young brother, and petitioner who was J.H.'s mother's long-time boyfriend.

The next day, June 10, 2013, A.H. told her step-mother (with whom she lived) that petitioner had touched her inappropriately that morning while A.H. was at J.H.'s house. The step-mother called the police who immediately responded to A.H.'s residence. Both A.H. and J.H. were at the residence when the police arrived. The police asked A.H. and J.H. to write a statement regarding the events that had taken place that morning. Although these statements are not in the parties' joint appendix record, the parties' briefs indicate that both girls claimed petitioner had touched them in a sexual manner that morning and that both girls claimed the same at a Child Advocacy Center a week or so later.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

On January 27, 2014, petitioner was indicted on five counts of sexual abuse by a parent, guardian, or custodian (Counts 1, 2, and 3, regard A.H.; Counts 4 and 5 regard J.H.); five counts of first degree sexual assault (Counts 6, 7, and 8 regard A.H.; Counts 9 and 10 regard J.H.); and five counts of third degree sexual assault (Counts 11, 12, and 13 regard A.H.; Counts 14 and 15 regard J.H.).

Petitioner's jury trial commenced on August 26, 2014. The State called A.H. who testified that on the morning of June 10, 2013, petitioner (1) put something on her face and mouth as she was sleeping and, soon thereafter, repeatedly fondled her breasts under her shirt; (2) attempted to place his fingers inside of her when she bent over to clean up spilled food, and (3) pushed her up against the refrigerator and attempted to "make out" with her and then licked the side of her face. A.H. also testified (1) that petitioner grabbed J.H.'s breast that morning and commented on its size, and (2) that petitioner entered the bathroom while both girls were inside and while J.H. was using the toilet. A.H. stated that petitioner yanked on J.H.'s shorts and underwear as if to pull J.H. off of the toilet, and then left the room.

During petitioner's case-in-chief, J.H. testified that A.H.'s step-mother told her what to write in her statement to the police. J.H. also testified that, on the morning in question, petitioner "slapped" her on the side of the breast and said "itty bitty titty committee." J.H. testified that it shocked her at first, but she later considered it not to be scary because she had known petitioner for seven years and "he wouldn't like do anything sexually, I guess." J.H. also testified that petitioner entered the bathroom while she was on the toilet with her shorts below her knees and that he pulled on the shorts as if he was going to pull her off the toilet. J.H. stated that petitioner left the bathroom when she told him she was going to tell her mother about the incident. J.H. further testified that the incident did not frighten her.

Petitioner also called Chester Sprankle, a child protective service worker for the West Virginia Department of Health and Human Services ("DHHR"). Mr. Sprankle investigated the allegation of abuse and neglect regarding J.H. Mr. Sprankle testified that he never spoke with A.H. because he determined that petitioner was not her "parent or guardian." With regard to J.H., Mr. Sprankle testified that, although petitioner had fondled J.H.'s breast, the fondling did not rise to the level of sexual gratification pursuant to Title 49 of the West Virginia Code. Mr. Sprankle also testified that petitioner admitted to entering the bathroom while J.H. was using the toilet, but again found that his acts were not for sexual gratification. Mr. Sprankle concluded that the petitioner's alleged abuse and neglect of J.H. was not substantiated.

Petitioner also testified and denied sexually touching either girl.

During deliberations, the jury asked the circuit court four questions. In their first question, the jury asked whether the counts in the indictment could be matched to the acts alleged at trial. The circuit court proposed the following written response:

> A number of episodes were alleged at trial and there are two alleged victims. The jurors are encouraged to search their own memories as to the testimony/exhibit[s]/evidence and to closely read the instructions on the various

counts and to come to their own conclusion as to what the evidence is and how it may apply to any of the counts.

The court inquired of both the State and petitioner's counsel regarding the proposed response; both responded, "Sounds fine." The court then sent the jury its written response. Neither party objected to the written response or to the procedure by which the court answered the question.

The circuit court deemed the jury's second question as "lengthy" and "fairly inscrutable." However, the circuit court summarized it as asking for "a clear definition of sexual desire." With the assistance of the State and the defense, the circuit court drafted the following written response:

Sexual desire would appear to be a state of mind and the existence of a motivation based on gratifying sexual desire[;] it would be for the jury to determine from all of the evidence in the case using common usage and meaning of terms in the English language.

Also, the statute requires that parties not be married to each other and that the act be done for the purpose of gratifying sexual desire of either party.

The parties "agreed" to this response and neither the State nor the defense lodged any objection.

The jury's third question regarded (1) how late in the day they should deliberate, and (2) whether they should eat dinner and resume deliberations or suspend deliberations and leave for the day. The judge proposed that he stand in the doorway of the jury room to answer the questions, with the court reporter present. In response, the defense said the following:

PETITIONER'S COUNSEL: I don't know if I am too cautious about these things, I think that makes sense. [Petitioner] says that is fine with him.

PETITIONER: Fine with me.

The circuit court then instructed the jury as follows:

THE CIRCUIT COURT: I have asked [the court reporter] to come back here because, first of all, I heard two blasts and I knew that there was some kind of question. Willie came and sort of told me what the general area of the question was. I am going to just address what I thought your basic questions are. I think it was about how you do tonight versus eating and the possibility of tomorrow and different things like that. I talked with the lawyers outside and they were all agreeable to me coming back and saying these things to you. First of all, you're the jury so you guys are, the best way to put it is, you're large and in charge, are the bosses. You can deliberate. Nobody tells you what to do or how to do it. There are some general options that are sort of available to you. We have had in the past we have had the jury stay late at night. In fact, Marcy was in a trial once in Morgan County with a jury who stayed until three o'clock in the morning, wasn't

3

it? I think in that case the judge leaned heavily on them to do that. I just let the jury do whatever they feel like they need to do. But in the past we have had say, for example, they all ordered out pizza, the clerk ordered pizza, brought it in and put it out for everybody, or sometimes the jury taking a break has gone out just the way we do for lunch, go out to dinner and come back and deliberate. Sometimes people go out and get fast food and eat while they deliberate or sometimes they run out of energy and would be a whole lot better off fresher if they came back the next day and did some more. You certainly can do that too. Everybody out in the courtroom wants to let you know that we are all good to be here as long as you all want to be here. Everybody is just happy to stay as long as you want to take. But, again, the bottom line is you guys are the jury so I can just leave and you all can talk about what you might want to do. We are all good to stay here as long as anybody wants to no problem that way. I got Laura Storm our circuit clerk down there is ready to make a call if anybody wants to get some kind of pizza or bring up pizzas and do that too. You all got to pay for them, I think. She didn't do it on her budget. I don't know if she did. I better check into that part actually. That might have a lot to do with what you decide.

Thereafter, the jurors indicated that they wanted to suspend deliberations for the day. The jury then returned to the courtroom, was instructed by the court, and then left for the day. During this process, neither party objected to the court's procedure regarding the manner in which it answered the jury's third question.

The jury's fourth and final question was what they should do if they could not come to a verdict on all counts of the indictment. In discussing the matter, petitioner's counsel argued that the jury was required to reach a unanimous verdict on all counts. The court then took a brief recess so it and the parties could research the matter. Twenty-five minutes later, proceedings resumed and the court read Rule 31(b)[2] of the West Virginia Rules of Criminal Procedure to the parties. Petitioner's counsel argued that Rule 31(b) "violated both the spirit and the intent of the West Virginia [and] United States Constitution[s] requiring unanimous verdicts in a case." The court noted petitioner's objection and then (apparently) sent a copy of Rule 31(b) to the jury.

On August 28, 2014, the jury found petitioner guilty of Count 3 (sexual abuse by a parent, guardian, or custodian against A.H.); Count 13 (first degree sexual assault against A.H.); and Count 8 (third degree sexual assault against A.H.) The jury acquitted petitioner of eight other counts (Counts 1, 5, 6, 10, 11, 12, 14, and 15), and were unable to reach a verdict on four counts (Counts 2, 4, 7, and 9).

---

[2] Rule 31(b) provides as follows:

If there is more than one . . . offense being tried, the jury at any time during its deliberations may return a verdict or verdicts with respect to . . . an offense as to which it has agreed; if the jury cannot agree with respect to all, the . . . offense as to which it does not agree may be tried again. In all cases involving multiple . . . offenses, the court shall require the jury to make a separate finding as to each . . . offense.

4

Petitioner filed post-trial motions which, following a hearing, the circuit court denied by order dated January 13, 2015. In that same order, the circuit court sentenced petitioner to not less than ten nor more than twenty years in prison for sexual abuse by a parent, guardian, or custodian; not less than one nor more than five years in prison for first degree sexual assault; and ninety days in jail for third degree sexual assault. The circuit court then ordered that all three sentences be served consecutively. Petitioner now appeals.

Petitioner raises three assignments of error on appeal.[3] Petitioner's first assignment of error is two-fold: first, petitioner argues that the circuit court erred in "instructing the jury," and second, petitioner argues that the circuit court instructed the jury on charges not supported by the evidence at trial. Petitioner claims that, due to these alleged errors, the circuit court wrongfully denied petitioner's motion for a judgment of acquittal.

With regard to petitioner's claim that the circuit court erred in instructing the jury, we have held that,

> A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

*State v. Guthrie*, 194 W.Va. 657, 663-64, 461 S.E.2d 163, 169-70 (1995). That said, nowhere in petitioner's briefs to this Court does he cite to a single jury instruction or argue why any of the jury instructions were improper.

> "An appellant must carry the burden of showing error in the judgment of which he complains. This Court will not reverse the judgment of a trial court unless error affirmatively appears from the record. Error will not be presumed, all presumptions being in favor of the correctness of the judgment." Syllabus point 5, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966).

*Skidmore v. Skidmore*, 225 W.Va. 235, 237, 691 S.E.2d 830, 832 (2010). Our review of the record on appeal reveals that the circuit court's jury instructions included the elements of each of the crimes charged and accurately reflected the law. Having found no error and in light of the deferential standard of review, we do not address this claim further.

---

[3] Petitioner actually lists four assignments of error in this opening brief to this Court. However, both petitioner's first and fourth assignments of error address the sufficiency of evidence at trial. Therefore, we address petitioner's first and fourth assignment of error together herein.

As for petitioner's claim of insufficient evidence, we have oft said,

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

Syl. Pt. 3, in part, *Guthrie*, 194 W.Va. at 663, 461 S.E.2d at 169. Further,

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*State v. LaRock*, 196 W.Va. 294, 304, 470 S.E.2d 613, 623 (1996)

In the instant case, the circuit court properly denied petitioner's motion for a judgment of acquittal given that the State presented substantial evidence of petitioner's guilt of each of the crimes of which petitioner was convicted: Count 3 (sexual abuse by a parent, guardian, or custodian), Count 8 (sexual abuse in the third degree), and Count 13 (sexual abuse in the first degree). For example, Count 3 of petitioner's indictment charged as follows: "[Petitioner], on the 10th day of June in 2013; in Jefferson County, West Virginia; did engage in or attempt to engage in, sexual contact with; [A.H.], a child under his care, custody and control." The evidence at petitioner's trial showed that petitioner engaged or attempted to engage in sexual contact with A.H. The evidence presented at trial regarding "sexual contact" included A. H.'s testimony that (1) she awoke in bed to find petitioner placing an unknown object inside her mouth; and (2) petitioner repeatedly put his hand up her shirt and rubbed her breast. The evidence regarding petitioner's "care, custody, and control" over A.H. included A.H.'s testimony that (1) on June 10, 2013, she spent the night with J.H.; (2) petitioner was in J.H.'s home that night and the following morning when A.H. and J.H. awoke; (3) petitioner was the only adult in the home on the morning of the crimes. Viewing this evidence in the light most favorable to the State, it is apparent that a rational trier of fact could have determined that the State met its burden of proof that petitioner engaged in or attempted to engage in sexual contact with A.H., while she was in his care, custody, or control.

Count 8 of the indictment charged as follows: "[Petitioner], on the 10th day of June in 2013; in Jefferson County, West Virginia; subjected [A.H.]; to sexual contact; when [A.H.] was less than 16 years of age; when the Defendant was neither less than four years older than [A.H.];

6

nor less than 16 years of age." The evidence regarding petitioner's sexual contact with A.H. includes that noted above. The evidence regarding A.H's age included her testimony that she was fourteen-years-old when she spent the night at the petitioner's home. With regard to petitioner's age, the State did not specifically enter evidence regarding it; however, DHHR case worker Chester Sprankle testified in rebuttal as follows:

THE STATE: Mr. Sprankle, how old is [petitioner]?

MR. SPRANKLE: I don't remember exactly.

THE STATE: If I said 50 years old, 51 years old, would you agree?

MR. SPRANKLE: I would say that would be a fair assessment, but exactly I don't know.

With regard to proof of petitioner's age, the circuit court found as follows at the hearing on petitioner's post-trial motions:

Without his exact birth date and birth certificate being before the jury, there is still[,] we have the testimony of two young girls as to their ages, we have the appearance of the [d]efendant and the testimony that he is approximately [fifty] years of age, but all the jury has to do is to satisfy themselves from a combination of circumstantial evidence and other things that are plainly before them that can plainly be viewed by their lay observation, we have a fully mature adult male as the [d]efendant and they can make a determination of whether they think there is four years difference in their age.

Based on the evidence on this count, a rational trier of fact could have determined that the State met its burden in proving that petitioner subjected fourteen-year-old A.H. to sexual contact when he was more than four years older than A.H.

Finally, Count 13 charged as follows: "[Petitioner], on the 10th day of June in 2013; in Jefferson County, West Virginia; subjected [A.H.]; to sexual contact; without consent of [A.H.]; and the lack of consent was a result of forcible compulsion." At trial, the circuit court instructed the jury that the term "forcible compulsion" includes

physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances, or . . . fear by a person under 16 years of age caused by intimidation, express or implied, by another person who is at least four years older than the victim. For purposes of this definition resistance includes physical resistance or any clear communication of the victim's lack of consent.

The jury heard testimony from A.H. that petitioner repeatedly placed his hands under her shirt and rubbed her breasts and that, at the time, A.H. "kept trying to move away, but every time I [would] scoot over he would scoot over and kept putting his hand up my shirt." A.H. also testified that when she was alone with petitioner in his kitchen and bending to sweep up spilled food, petitioner "kept trying to put his finger inside me. So I jerked away. I jerked away and I

swept [the food] up." A.H. then testified that, thereafter, petitioner "pushed me up against the fridge and tried to make out with me. I wouldn't let him so he licked the side of my face. Then I kept telling him to get off and he wouldn't get off. Then he eventually got off." Viewed in the light most favorable to the state, a rational trier of fact could have determined that the State met its burden of proving that petitioner subjected fourteen-year-old A.H. to sexual contact without her consent and that the lack of consent was the result of forcible compulsion. Hence, we find that the circuit court did not err in denying petitioner's motion for a judgment of acquittal.

Petitioner's second assignment of error is that the circuit court erred in the manner in which it answered the jury's four questions during deliberations. Specifically, petitioner argues that the circuit court denied his right to be present at all critical stages of the proceeding and that he was negatively affected thereby. As noted above, the circuit court answered the jury's questions two ways: first, the circuit court devised a written answer for the jury's first, second, and fourth questions. Those writings were then sent to the jury in the jury room.[4] As petitioner highlights, a "defendant has a right under Article III, Section 14 of the West Virginia Constitution to be present at all critical stages in the criminal proceeding; and when he is not, the State is required to prove beyond a reasonable doubt that what transpired in his absence was harmless. *State v. Boyd*, 160 W.Va. 234, 235, 233 S.E.2d 710, 713 (1977). "[A] critical stage in the criminal proceeding is one where the defendant's right to a fair trial will be affected." *Id.* at 246, 233 S.E.2d at 719.

We agree with petitioner's assertion that he had a right to be present during the process by which the circuit court developed written answers to the jury's first, second, and fourth questions given that it was a critical stage of his proceeding where his right to a fair trial could have been affected. That said, as proved by the record on appeal, petitioner *was* present during this critical stage, as were his counsel and the State by its counsel. Moreover, both counsel—in petitioner's presence—assisted the circuit court in drafting the written answers. Therefore, we find no error, particularly in light of the fact that petitioner's counsel lodged no objection to the manner in which the circuit court chose to answer the jury's first, second, and fourth questions.

As for the jury's third question, regarding how long the jury should continue to deliberate, petitioner did not object to the manner in which the circuit court answered that question. Thus, petitioner's claim of error with regard to the third question has not been preserved for appeal. Nor do we find that petitioner was prejudiced by the manner in which the circuit court answered the third question. We had said, "[a]s a general rule, all communications between the trial judge and the jury, after the submission of the case, must take place in open court and in the presence of, *or after notice to, the parties or their counsel*." Syl. Pt. 1, *Klesser v. Stone*, 157 W.Va. 332, 332, 201 S.E.2d 269, 270 (1973) (emphasis added). Here, after notice to the State, petitioner's counsel, and petitioner, and with their express approval, the circuit court judge stood in the door of the jury room and answered the question in the presence of the court

---

[4] Petitioner's counsel did not object to the answers to the first or second questions; however, petitioner's counsel did lodge an objection to the fourth answer. Petitioner did not renew his objection to the contents of the fourth answer on appeal; instead, he appeals only the manner in which the questions were answered.

reporter, while the parties remained in the courtroom. Petitioner's constitutional rights were in no way infringed by this procedure given the topic under discussion regarded whether the jury should eat a meal and continue deliberations or suspend deliberations for the day. Nor is there any likelihood that this interaction between the court and the jury contributed to the jury's ultimate verdict. Hence, we find no error.

Petitioner's third and final assignment of error is that the circuit court erred in allowing the jury to consider that petitioner was A.H.'s parent, guardian, or custodian given petitioner's assertion that he had only a "bystander" relationship with A.H. who was nothing more than a "visitor" in his home.

Count 3 of petitioner's indictment charges that he "committed the offense of SEXUAL ABUSE BY A PARENT, GUARDIAN, OR CUSTODIAN OR PERSON IN A POSITION OF TRUST" in violation of West Virginia Code § 61-8D-5. West Virginia Code § 61-8D-1 defines "parent," "guardian," "custodian," and a "person in a position of trust" as follows: "'Parent' means the biological father or mother of a child, or the adoptive mother or father of a child." *Id.* "'Guardian' means a person who has care and custody of a child as the result of any contract, agreement or legal proceeding." *Id.* "'Custodian' means a person over the age of fourteen years who has or shares actual physical possession or care and custody of a child on a full-time or temporary basis, regardless of whether such person has been granted custody of the child by any contract, agreement or legal proceeding . . . ." *Id.* Finally,

> A "person in a position of trust in relation to a child" refers to any person who is acting in the place of a parent and charged with any of a parent's rights, duties or responsibilities concerning a child or someone responsible for the general supervision of a child's welfare, or any person who by virtue of their occupation or position is charged with any duty or responsibility for the health, education, welfare, or supervision of the child.

*Id.*

The question of whether a person charged with a crime under West Virginia Code § 61–8D–5 is a custodian or person in a position of trust in relation to a child is a question of fact for the jury to determine. *State ex rel. Harris v. Hatcher*, __W.Va.__, 760 S.E.2d 847, 848 (2014). Here, the jury determined that A.H. was in petitioner's care, custody, or control. As we found above, the evidence adduced at trial regarding petitioner's "care, custody, and control" over A.H., viewed in the light most favorable to the State, was sufficient for a rational trier of fact to determine that petitioner engaged in or attempted to engage in sexual contact with A.H., while she was in his care, custody or control. Therefore, we will not disturb the jury's determination on appeal.

Accordingly, for the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 12, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II

10