## ALICE R. BRITTON *vs.* WILLIS E. HARTSHORN.

Third Judicial District, New Haven, June Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 2d—decided July 29th, 1931.

*Charles S. Hamilton,* for the appellant (plaintiff).

*Lawrence A. Howard* and *Cyril Coleman,* for the appellee (defendant).

HINMAN, J. The plaintiff offered evidence that she was advised by her physician, Dr. Black, to go to Griffin Hospital at Derby and submit to an operation to be performed by the defendant, for the removal of a uterine tumor, consented to do so and went to the hospital for that purpose. The defendant made a physical examination and informed her that the tumor could only be cured by removal. At no time was anything said to her about an exploratory operation for the purpose of ascertaining the kind of tumor or its size or extent, or any other operation than one to remove it. She consented to this and was etherized, and upon recovering consciousness found that an incision about five inches long had been made in her abdomen, but later discovered that the tumor had not been removed, and afterward it was removed by another surgeon. In consequence of the acts of the defendant, she suffered from phlebitis and shock and incurred expenses in attempting to obtain a cure therefrom.

The defendant, after proof of his professional qualifications, offered evidence that he was asked by Dr. Black to perform an operation upon the plaintiff, at

the Griffin Hospital, for the removal of an abdominal tumor. He made a thorough pre-operative examination and found the plaintiff suffering from a large tumor filling the entire abdomen. Tumors of this kind are either cystic, fibroid, or fibro-cystic. Cystic tumors are filled with fluid and are usually easily removed; a fibroid tumor is a solid mass and, particularly when adherent to surrounding tissue, is difficult to remove; fibro-cystic tumors are partly cystic and partly fibroid, and the difficulty of removal depends upon the relative proportions and whether the growth is attached to the body wall by a single stem or by numerous adhesions. It is impossible to determine before an incision is made whether a tumor is cystic, fibroid, or fibro-cystic. The pre-operative examination indicated a probability that the plaintiff's tumor was cystic or fibro-cystic. The plaintiff was informed by the defendant that he would do nothing to endanger her life, and that if he found that the growth was too involved to permit its removal without danger to life, no extensive operation would be performed at the time, and the plaintiff assented. Upon making a preliminary incision to inspect the tumor and determine the procedure to be followed in its removal, the defendant found an entirely fibrous tumor fed by numerous large blood vessels and firmly adherent to various organs and the body wall and securely lodged in the pelvic cavity. In conference with Dr. Black and Dr. Finn, who were assisting, he decided that to then remove the tumor would, under the circumstances, endanger the plaintiff's life, and that it should be removed later at the New Haven General Hospital. The incision was then closed and the plaintiff made a rapid, uneventful recovery.

The defendant also offered proof that his decision not to complete the operation was based on the facts

that he was working at a hospital other than, and not so well equipped as, the New Haven General where he usually operated, and was without his team of trained assistants who were accustomed to his technique. At the New Haven Hospital there are on call for immediate use persons whose blood is typed in advance for use if transfusion is necessary, and numerous surgeons available as assistants in the operating room in an emergency. Such a serious operation would have necessitated minute post-operative care by the defendant, who could give it better in the New Haven Hospital. When the plaintiff recovered consciousness, she was advised both by the defendant and by Dr. Black of the decision and that it would be necessary to come into the New Haven Hospital to have the operation performed, but she neglected and refused to follow this advice. After eighteen months of medical treatment by other physicians, she was operated on at Saint Raphael's Hospital, New Haven, by Dr. Verdi, with the assistance of his staff and Doctors Black and Allen, the operation consuming an hour and fifty-five minutes and the tumor when removed weighing thirty-eight pounds. When the defendant began the operation, he expected to be able to remove the tumor, and it was not until the incision revealed an unusually dangerous condition that he abandoned his plan to remove it. He offered expert opinion evidence that he used due care and skill in his treatment, operation, and care of the plaintiff, and excellent judgment in refusing to continue the operation under the circumstances.

The assignments of error relate to failure to charge as requested, portions of the charge as given, and rulings on evidence. So far as the requests set forth correct propositions of law they were adequately covered, in substance, in the charge as given. Requests

which would impose upon the defendant a requirement that he exercise such a degree of care and skill as to enable him, in all cases, to operate successfully and effect a cure, imposed a more exacting standard of qualifications and duty than the law contemplates, and were rightfully refused. So also were requests to the effect that consent of the plaintiff to undergo an operation for the removal of the tumor did not authorize a lesser operation such as the defendant in fact performed, even though the greater operation was undertaken but was discontinued because of conditions discovered, in the course of it, rendering immediate removal hazardous and therefore inadvisable. The finding discloses nothing which required or gave occasion for instructions based upon a premise that the defendant undertook or intended at the inception to perform an exploratory operation, only.

Error is assigned in the instruction given that: "Negligence and unskillfulness are not presumed; they must be proved. In the absence of evidence to the contrary, the law will presume from the physician's right to exercise his profession that he has not violated his duty to exercise it with the requisite care and skill." This was preceded by a charge that "the burden rests upon the plaintiff, if she is to recover, to prove, by fair preponderance of the evidence . . . the essential controverted facts set forth in the complaint," and followed by "the actual actions or omissions necessary to show that ordinary skill has not in fact been exercised in a particular case, must be established by a preponderance of the evidence." Both the wording and the context show that the court was then referring only to the burden of proof. The burden imposed upon a physician or attorney for the purpose of making out his case, in chief, in an action for compensation for services is satisfied, as to the

element of use of care and skill, by the "theory of law which presumes from the evidence of his right to exercise his profession, that he has not violated his duty to exercise it with the requisite care and skill." A defense that such care or skill has not in fact been exercised, must be established by the defendant by showing, by a preponderance of the evidence, acts or omissions constituting such violation of duty. *Styles* v. *Tyler,* 64 Conn. 432, 464, 30 Atl. 165; *Slade* v. *Harris,* 105 Conn. 436, 439, 135 Atl. 570. The same principle, in essence, is applicable in a malpractice case, and requires the plaintiff, in chief, to introduce evidence in support of his necessary allegations of want of care or skill, before the defendant is called upon to produce evidence upon that issue, and the burden is upon the plaintiff ultimately to establish these elements by a preponderance of the evidence. *Sheldon* v. *Wright,* 80 Vt. 298, 67 Atl. 807, 814; *Priest* v. *Dodsworth,* 235 Ill. 613, 617, 85 N. E. 940; *Fincher* v. *Davis,* 27 Ga. App. 494, 108 S. E. 905; *Georgia Northern Ry. Co.* v. *Ingram,* 114 Ga. 639, 40 S. E. 708; *Hanners* v. *Salmon,* 216 Ky. 584, 288 S. W. 156; *Angulo* v. *Hallar,* 137 Md. 227, 112 Atl. 179; *State* v. *Housekeeper,* 70 Md. 162, 16 Atl. 382, 2 L. R. A. 587; *De Rose* v. *Hirst,* 282 Pa. St. 292, 127 Atl. 776; *Philadelphia & Reading R. Co.* v. *Hummell,* 44 Pa. St. 375; 48 Corpus Juris, p. 1142; 21 R. C. L. 406.

In applying this principle some of the decisions have not clearly drawn or indicated the distinction between it and presumptions which are in the nature of evidence, to be weighed by the jury in connection with the other evidence in the case and "supply the place of evidence in setting up something which must be overcome by proof." *Weidlich* v. *New York, N. H. & H. R. Co.,* 93 Conn. 438, 442, 106 Atl. 323; *Sheldon* v. *Wright, supra.* The context of the statement in *Slade* v. *Har-*

*ris, supra,* p. 440, shows that its application was to the plaintiff's burden in an action for services, in presenting his case in chief. The fault of a request to charge that the defendant in a malpractice action was "entitled to the benefit of a presumption that he discharged his duty . . . until the contrary is shown" (as in *Chubb* v. *Holmes,* 111 Conn. 482, 487, 150 Atl. 516) is that, without limitation, either express or arising from the context, it would permit the implications from the right to exercise the profession to be given weight in the determination of the preponderance. The charge now under consideration could not well have been understood otherwise than as stating the rule, supported by overwhelming authority, as above indicated, that in the absence of any evidence of lack of proper care or skill, introduced by the plaintiff, on whom rested the burden of affirmatively proving it, the implications arising from the defendant's right to practice his profession would be sufficient to entitle him to prevail on that issue without the production, further, of evidence that he, in fact, exercised such care and skill. Moreover, as the plaintiff had introduced evidence in support of her allegations of lack of care and skill, the charge upon the burden of proof would have been sufficient without referring to or explaining the presumption in question—in fact the omission would have been preferable. *Firszt* v. *Capitol Park Realty Co.,* 98 Conn. 627, 645, 120 Atl. 300; *Barlow Bros. Co.* v. *Gager,* 113 Conn. 429, 155 Atl. 628.

Instruction that the fact that the result of an operation was not as favorable as hoped for by the patient or the operator raises no presumption of want of proper care of skill, was correct. *Chubb* v. *Holmes, supra,* p. 488; *Ewing* v. *Goode,* 78 Fed. 442, 443; 21 R. C. L. 392; *Staloch* v. *Holm,* 100 Minn. 276, 111 N. W. 264, 9 L. R. A. (N. S.) 712, 718. So, also, was

the supplementary comment that medical and surgical science has not been so perfected "that a complete cure can be assured." A different situation would have been presented had the statement been that produced by the transparent distortion, in the plaintiff's brief, of the court's language into a declaration that the progress of the science is not such that a complete cure can be "secured." The claim made by counsel for the plaintiff, in argument, that the defendant's failure to remove the tumor was a breach of his contract could not have been otherwise than, as the court stated, "based on the assumption that the contract . . . was to remove the tumor regardless of developments during the course of the operation." Objection to this portion of the charge is predicated upon the same fallacious contention as has been mentioned in connection with the requests to charge—that it could not be found otherwise than that the operation from its inception was merely exploratory and therefore there could have been no later developments causing a change in its nature.

The court stated the claim of the defendant "that the contract was to treat the plaintiff's ailment with proper care and skill, and in no event would he endanger her life, and that when, during the course of the operation, it became apparent to him that to complete it under the then existing circumstances might endanger her life, he complied with his agreement by taking no further steps to remove the tumor," and charged "if you find this to have been the agreement of the parties, and that the defendant did not remove the tumor for the reason that to have done so would have endangered the plaintiff's life, and that his conduct was in accord with the standard of due care and skill previously given you, then the contract would not have been breached." The appellant's objection

appears to be that it does not take into account claims of the plaintiff that with proper care and skill the defendant could have determined, before commencing the operation, whether the tumor could safely be removed at that time and place, also that, having undertaken the operation, it was his duty to proceed with it to completion by removing the tumor. As to this, it is sufficient to point out that the court was here considering the defendant's claim as to the nature and extent of his agreement with the plaintiff and the results of a finding that the contract was in accordance with those claims. The variant claims of the plaintiff as to the terms of the contract, and the consequence of a finding accordingly were adequately covered in other portions of the charge.

The charge made reference to the evidence of Doctor Verdi as being to the effect that in his opinion there was no lack of skill exhibited by the defendant in not removing the tumor under the circumstances. Criticism of this is based upon the appellant's assumption that the operation was intended as exploratory only, and the witness' cross-examination regarding such operations, and is without merit. So, also, is the claim that there was no occasion for the instruction upon the subject of proximate cause, the legal accuracy of which is not questioned.

The assignments pertaining to rulings on evidence require no extended discussion. Testimony of the plaintiff as to the contents of a lost letter, sent by her to the defendant in response to a bill for his services, clearly was not admissible on the ground claimed—as part of the *res gestœ*. *Haywood* v. *Hamm*, 77 Conn. 158, 159, 58 Atl. 695; 3 Wigmore on Evidence (2d Ed.) § 1757. As a self-serving declaration, which was its only apparent utility, it was equally objectionable. *Roberti* v. *Barbieri*, 105 Conn. 539, 542, 136 Atl. 35;

*Smith* v. *Phipps*, 65 Conn. 302, 309, 32 Atl. 367. The question to the defendant, "Do you know how long it did take when Doctor Verdi removed it?" (the tumor) was admissible with the limitation imposed by the court: "If he knows." *C. and C. Electric Motor Co.* v. *D. Frisbie & Co.*, 66 Conn. 67, 81, 33 Atl. 604. The answer given was not responsive, but it does not appear that any motion to strike it out was made. Moreover, the answer accorded with the plaintiff's evidence as to the time consumed by the Verdi operation, as shown by the finding. The defendant's testimony as to the facilities of the New Haven hospitals for such an operation as compared with that at Derby was confined to those at the New Haven Hospital, with which he was obviously familiar, and it was clearly relevant to the claimed justification for postponement of removal of the tumor.

A hypothetical question was propounded to Doctor Verdi for the purpose of obtaining his opinion, based thereon, as to whether there was lack of skill or care on the part of the defendant. The finding shows that there was evidence supporting the statements embodied in the question to which objection was made at the time; the reference to the plaintiff's failure to follow the defendant's advice plainly related to advice, following the operation, as to subsequent removal of the tumor. To permit the witness to also give an opinion as to the judgment shown by the defendant, without repetition of the hypothetical question, was within the discretion of the court, and a wise exercise of it, under the circumstances. The further objection that the hypothetical question related to the ultimate issue as to negligence or lack of skill, to be determined by the jury, was invalid as applied to cases of this kind in which opinion evidence on the main issue of professional care and skill, being "a

494

topic requiring special experience of an expert," is not only permitted but required to be produced by the plaintiff. 4 Wigmore on Evidence (2d Ed.) § 2090; *Slimak* v. *Foster*, 106 Conn. 366, 368, 138 Atl. 153. To controvert this, similar evidence is available to the defendant. It remains the province of the jury to consider and weigh conflicting opinions and determine therefrom whether proper professional skill and care was exercised. *Naveckas* v. *Jack*, 112 Conn. 407, 412, 152 Atl. 580. The other rulings appealed from afford no good ground for complaint or occasion for comment.

There is no error.

In this opinion the other judges concurred.