[No. 42365.    En Banc.    January 4, 1973.]

MARY PEACOCK, *Appellant*, v. CLINTON A. PIPER *et al.*, *Respondents*.

*Leon L. Wolfstone* and *Jan Champion* (of *Wolfstone, Panchot & Bloch*), and *Neil J. Hoff*, for appellant.

*Comfort, Dolack, Hansler & Billett*, by *Allan R. Billett*, for respondents Piper.

*Lycette, Diamond & Sylvester* and *Earle W. Zinn*, for respondents Wickstrom.

*Karr, Tuttle, Koch, Campbell, Mawer & Morrow* and *F. Lee Campbell*, for respondents Green.

WRIGHT, J.—Mary Peacock, born June 20, 1959, brought this action, through her guardian ad litem, for personal injuries. Plaintiff is suffering from a form of cerebral palsy, known as choreo-athetosis, as a result of which she has no voluntary control of her arms and legs.

When plaintiff was 3 months old, on September 16, 1959,

she was admitted to Madigan Army Hospital for breathing difficulties. At that time a tracheotomy was performed; it was discovered she had a swelling in her throat which was the cause of her trouble, but no diagnosis was made of the exact cause of the trouble until later. She remained in the hospital recovery room, until October 15, 1959.

On October 15, 1959 she had surgery and the offending obstruction was removed. It proved to be a benign tumor in her larynx.

Defendant, Arthur Wickstrom, was the surgeon. Defendant, Clinton A. Piper, was the assistant. Defendant Henry Green, was the anesthesiologist. Dr. Green was a captain in the medical corps and the chief of anesthesiology at Madigan Army Hospital. Dr. Wickstrom and Dr. Piper were civilians, called in for the specific surgery.

At the time such an operation on a child of 3 months was extremely rare. Dr. Wickstrom had a stent specially made by the dental laboratory; its function was to keep the airway open during healing. It is admitted that the surgery was skillfully done.

After the surgery, plaintiff was returned to the recovery room. The nurse in charge was Captain Bertha Tiffany, who, having been in the army medical corps since World War II, was experienced. Captain Tiffany had been regularly in charge of the recovery room during her hours on duty for about a year—including the month before the operation when plaintiff was a patient there. Captain Tiffany was well aware of plaintiff's problems. Captain Tiffany was not called as a witness.

Approximately 2 hours after the surgery, plaintiff had some kind of an attack. The nature of the attack is in dispute, being variously called a "cardiac arrest", an "episode of circulatory distress", or of "a hypotensive nature". There is also direct conflict between the medical witnesses as to whether the episode had any connection with the subsequent palsy condition.

The plaintiff's heart stopped. Captain Tiffany gave mouth-to-mouth resuscitation. Dr. Green was nearby and

ran to the recovery room. Dr. Green immediately opened plaintiff's chest and gave heart massage and started the heart beating. Dr. Green found the pupils of plaintiff's eyes were not dilated.

Immediately after the surgery, the three physicians left orders, both verbal and written, for the recovery room care of plaintiff. Dr. Piper wrote most of the orders, which were reviewed by the others. Dr. Wickstrom made some additions. They also supplemented the written orders with verbal instructions. Plaintiff's claim of negligence was that the orders were confusing, conflicting, and inadequate.

At that time the stent was in place, held by a wire to the tracheotomy opening. The written orders said "leave wire alone" and had no direction for removal of the stent. There was no written order for constant observation of plaintiff. No useful purpose would be served by a detailed statement of the various claimed conflicts between written and verbal orders and between the verbal orders of the several physicians.

This action was instituted in superior court July 14, 1967. In April, 1968, a motion for summary judgment of dismissal was made by defendants. That motion was overruled and on January 7, 1971 the matter came on for trial to a jury. Following 13 days of trial the jury verdict was returned on February 9, 1971 in favor of all defendants. Notice of appeal was filed on March 9, 1971. Plaintiff set forth several assignments of error which will be discussed herein.

Defendants did not cross-appeal, but in support of the judgment did urge that the motion for summary judgment should have been granted. That matter will be discussed before considering the assignments of error.

In 1965, plaintiff, acting through her guardian ad litem brought suit against the United States government under the Federal Tort Claims Act. That suit was dismissed for the reason it was not brought within 2 years as required by the statute (28 U.S.C.A. § 2401). That prior action was the basis for a motion for summary judgment which was denied

by the Honorable Hardyn B. Soule, one of the judges of the superior court.

The Federal Tort Claims Act, 28 U.S.C.A. § 2401(b) provides in part:

> A tort claim against the United States shall be forever barred unless action is begun within two years after such claim accrues . . .

The rule is well established that a sovereign cannot be sued without permission. Permission was granted to sue the government of the United States for tort by the Tort Claims Act, *but only if the terms of that act are followed.* The matter is jurisdictional. *Humphreys v. United States,* 272 F.2d 411 (9th Cir. 1959); *McGillic v. United States,* 153 F. Supp. 565 (D.N.D., S.W.D. 1957); *Ashley v. United States,* 413 F.2d 490 (9th Cir. 1969); *Mann v. United States,* 399 F.2d 672 (9th Cir. 1968); *Huntington Steel Corp. v. United States,* 153 F. Supp. 920 (S.D.N.Y. 1957).

■ The dismissal of a suit for lack of jurisdiction is not res judicata. It was said in *Williams v. Minnesota Mining & Mfg. Co.,* 14 F.R.D. 1, 8 (1953):

> The long-settled general rule is that a judgment of dismissal for want of jurisdiction is not res judicata as a final decision upon the merits, and consequently does not operate as a bar to a subsequent action before some appropriate tribunal.

We, therefore, hold the action of the trial court was proper in the matter of overruling the defendants' motions for summary judgment of dismissal.

We will next consider the several assignments of error. Ten of the assignments raised alleged errors occurring at the trial. The 11th assignment is directed to the refusal of the trial court to grant plaintiffs a new trial, and it is based upon the other 10 assignments.

■ Plaintiff's first assignment of error is directed to the court's instruction No. 17, which reads as follows:

> You are instructed that the law accords to each defendant physician the presumption that he possessed sufficient learning and skill and that he has properly applied

that degree of learning and skill and such presumption prevails until and unless it is overcome by evidence to the contrary.

The first part of the instruction, that a physician is presumed to possess learning and skill, is a proper statement. Physicians are licensed by the State of Washington under rigid requirements. (RCW 18.71.) The passing of the examination for a professional license, together with the completion of the required education, raises a strong presumption that the physician has the requisite learning and skill.

It was said in *Eckleberry v. Kaiser Foundation Northern Hosps.*, 226 Ore. 616, 624, 625, 359 P.2d 1090, 84 A.L.R.2d 1327 (1961):

A licensed practitioner of the healing art of medicine is presumed to have the necessary medical knowledge to practice his profession.

On the other hand, to say "he has properly applied that degree of learning and skill" is to invade the province of the jury. The very question the jury was to decide was whether or not the defendants had properly carried out their professional duties.

The plaintiff had the burden of proof and the duty to adduce a preponderance of the evidence. To add to that burden the further obligation to overcome a presumption of due care would place upon plaintiff a double burden. In *Graving v. Dorn*, 63 Wn.2d 236, 386 P.2d 621 (1963), the plaintiff had the burden of proving the affirmative defense of contributory negligence. Therein it was held proper to refuse instructions which had the effect of putting a double burden upon the party who had the burden of proof. To the same effect is *Hutton v. Martin*, 41 Wn.2d 780, 252 P.2d 581 (1953).

A case in point, one with a similar instruction, is *Maertins v. Kaiser Foundation Hosps.*, 162 Cal. App. 2d 661, 665, 328 P.2d 494, 75 A.L.R.2d 807 (1958). In that case it was held reversible error to give such an instruction. The court said in part:

It is ordinarily error to give such an instruction where

evidence is produced by the defendant as to the circumstances of his conduct which is alleged to be negligent.

Although two cases seem at first view to be contrary to the view herein expressed, they can be readily distinguished. *Fritz v. Horsfall*, 24 Wn.2d 14, 163 P.2d 148 (1945), was a case involving the granting of a new trial. The ground upon which a new trial was sought was newly discovered evidence. An order granting new trial was reversed upon the ground the affidavits submitted in support of the motion did not set forth any valid reason for the granting of a new trial. The rules for granting a new trial upon the ground of newly discovered evidence were set out, quoting from *Morrow v. Morrow*, 179 Wash. 329, 37 P.2d 692 (1934). The rules then in effect for the review of orders granting new trial were also discussed. No issue of instructions was involved.

*Derr v. Bonney*, 38 Wn.2d 678, 231 P.2d 637 (1951) was a case in which the trial judge dismissed at the close of plaintiff's testimony. Plaintiff appealed from the order of dismissal. A motion for nonsuit admits (for the purpose of the motion) the truth of plaintiff's evidence, and all reasonable inferences drawn therefrom, in the light most favorable to plaintiff. The only question before the court in *Derr* was whether there was sufficient evidence to avoid the nonsuit, when the above rule was applied. The dicta from *Fritz v. Horsfall, supra,* was set forth at length, but again it was in large measure, dicta. Obviously, in a case dismissed at the end of plaintiff's testimony, there is no issue of instructions.

Neither *Fritz v. Horsfall, supra,* nor *Derr v. Bonney, supra,* in any way state or suggest an instruction such as the court's instruction No. 17 herein. The dicta statements which are relevant herein are identical in both cases and are found in *Fritz* on page 16, and in *Derr* on page 680 and read:

(1) An individual licensed to practice medicine is presumed to possess that degree of skill and learning which is possessed by the average members of the profession in

the community in which he practices, and that he has applied that skill and learning with ordinary and reasonable care to those who come to him for treatment;

. . .

38 Wn.2d at 680.

The second part of the statement is another way of expressing the rules of burden of proof and preponderance of the evidence. The defendants, however, are not entitled to what might appear to be a double presumption. The court fully instructed on the burden of proof and the duty of the plaintiff to prove her case by a preponderance of the evidence. The court's instruction No. 9 read:

The plaintiff has the burden of proving each of the following propositions:

First, that one or more of the defendants acted, or failed to act, in one or more of the ways claimed by the plaintiff and that in so acting, or failing to act, said defendant was negligent as elsewhere in these instructions defined;

Second, that the plaintiff was injured (or her injuries made more severe) or her condition impaired;

Third, that the negligence of said defendant in one or more of the instances asserted was a proximate cause of said injury sustained by plaintiff or impairment of health of the plaintiff.

If you find from your consideration of all of the evidence that each of these propositions has been proved, your verdict should be for the plaintiff. On the other hand, if any of these propositions has not been proved, your verdict should be for the defendants.

Instruction No. 10 gave the standard definitions of "burden of proof" and of "preponderance of the evidence". The first paragraph of the instruction is WPI 21.01, and the second paragraph is a definition of "preponderance of the evidence." No useful purpose would be served by setting forth the full text of that instruction.

Instruction No. 21 again states the idea that negligence is never presumed, but must be proved by the evidence. It reads:

You are instructed that the fact that Mary Peacock

suffered complications and disability following the surgery performed upon her or participated in by a defendant herein is no evidence in itself of negligence on the part of any defendant.

We are here concerned with instruction No. 17 which could very easily give the jury the impression the plaintiff had a double burden, which is not the law.

The instruction being erroneous, the judgment of the trial court must be reversed and the matter remanded for a new trial with proper instructions being given to the jury. Because there may be a new trial, it is proper to mention some of the other assignments of error.

The second assignment of error relates to the matter of joint liability. The situation involved herein was somewhat unusual in that Dr. Wickstrom and Dr. Piper were civilians called into an army hospital for a specific purpose. Dr. Green was a captain in the army and was regularly at the hospital. While the civilian physicians were called "civilian consultants" they were actually called for surgery, not consultation.

Under the circumstances existing in this case we cannot say the court committed error in failing to give plaintiff's proposed instruction No. 45 on joint liability which read:

You are instructed that the defendant husbands having jointly undertaken the responsibility for the surgery and other aspects of the care and treatment of Mary Peacock as in these instructions set forth, that therefore if you find one or more of the defendants to have been negligent as in these instructions defined and that said negligence caused or contributed to the injury of Mary Peacock, you must and shall return your verdict against all of the defendants.

Furthermore, it should be noted that plaintiff did not except on this ground to the court's instruction No. 18 which related to the same subject and which read:

A physician independently employed or acting independently of another physician or physicians in the case is not liable for a wrongful act, if any, of such other physician or physicians, unless he observed, or, in the

exercise of ordinary care, should have observed a wrongful act on the part of such other physician.

Instruction No. 18 was included only in a list of instructions which were alleged to overemphasize defendants' contentions.

Finally, the jury found in favor of all of the defendants, and, therefore, it cannot be said any prejudice resulted from the failure to give plaintiff's proposed instruction No. 45.

The third and fourth assignments of error related to the court's ruling on the testimony of certain expert medical witnesses. The court restricted the effect of such testimony so that it was not to be considered as against defendant, Dr. Piper. Assignment No. 3 relates to the court's decision on that matter, and assignment No. 4 relates to instruction No. 9A which was on the same subject.

We said in *Sather v. Lindahl,* 43 Wn.2d 463, 467, 261 P.2d 682 (1953): "We award no accolade to the appellant for his conduct". That involved a similar failure to supply the names of witnesses. The rules relative to discovery were designed to avoid surprise in trials, and to secure more perfect justice. Litigants and counsel should comply with these rules with scrupulous care. With the knowledge of the problem which plaintiff now has, we feel no doubt plaintiff will give adequate notice of the witnesses to be called. There will, therefore, be no problem in a retrial, and we need not further discuss the matter.

Plaintiff's final contention groups several assignments of error. The contention is that the giving of certain instructions tended to overemphasize defendants' contentions and to be prejudicial when considered in total.

■ The matter of how many instructions to give is within the discretion of the trial court. *Tyler v. Tyler,* 65 Wn.2d 102, 395 P.2d 1021 (1964); *Consolidated Dairy Prods. Co. v. McDonald,* 71 Wn.2d 153, 426 P.2d 978 (1967); *Reynolds v. Phare,* 58 Wn.2d 904, 365 P.2d 328 (1961). We find no abuse of discretion herein.

Upon the basis of the error in giving instruction No. 17, we reverse, and remand for a new trial.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, STAFFORD, and UTTER, JJ., concur.