575 S.E.2d 350

Ronald L. MATHENY and Sherry Matheny, His Wife, Plaintiffs Below, Appellants,

v.

FAIRMONT GENERAL HOSPITAL, INC., a West Virginia Corporation, and Robert Thompson, M.D., Defendants Below, Appellees.

No. 30256.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 13, 2002.

Decided Dec. 6, 2002.

Concurring Opinion of Justice Albright Dec. 11, 2002.

Crystal Hawkins Castleberry, Morgantown, Gregory A. Gellner, Wheeling, West Virginia, Attorneys for the Appellants.

Stephen R. Brooks, Flaherty, Sensabaugh & Bonasso, Morgantown, West Virginia, Attorney for the Appellee Fairmont General Hospital, Inc.

DAVIS, Chief Justice:

In this medical malpractice action against Fairmont General Hospital, Ronald L. Matheny and his wife, Sherry Matheny, appeal from an order of the Circuit Court of Marion County denying their motion for a new trial. On appeal, Ronald and Sherry Matheny complain that the circuit court erred by (1) instructing the jury that there was a presumption that Fairmont General Hospital had acted in accordance with the standard of care; (2) instructing the jury in a manner

contrary to their theory of the case; (3) permitting Fairmont General Hospital's counsel to improperly raise a comparative negligence defense during closing argument; and (4) incorrectly answering a question posed by the jury during its deliberations. We find that the court committed reversible error in giving the challenged instructions. Consequently, we reverse this case, and remand for a new trial.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On January 12, 1996, Ronald L. Matheny (hereinafter referred to as "Mr. Matheny"), appellant and plaintiff below, sought treatment at the emergency department of Fairmont General Hospital, Inc. (hereinafter referred to as "Fairmont General"), appellee and a defendant below. Mr. Matheny, who complained of pain in his right hip that began after he attempted to push a car from a snow bank, was treated by Dr. Robert Thompson and by the emergency department nursing staff.[1] According to the parties, Mr. Matheny's medical records documenting his visit to the Fairmont General emergency department reveal that his temperature rose three full degrees during his brief stay. Nevertheless, Mr. Matheny's diagnosis was limited to "hip injury/severe arthritis" and he was released from the emergency department with crutches, pain medications, and instructions to apply ice to his hip. There was apparently no attempt made to ascertain the source of his fever, or to treat the same during this visit to the hospital.

Mr. Matheny's condition worsened. He returned to the hospital on January 17, 1996, and was admitted. At this time it was discovered that he had been suffering from a staphylococcus aureus infection in his right hip. Because the condition had not been treated, it had progressed into a serious abscess. As a result of the abscess, Mr. Matheny suffered numerous complications that required his admission to the hospital for several days and has apparently left him with very little function in his right hip. He now walks with a cane.

Thereafter, on June 9, 1997, Mr. Matheny and his wife Sherry Matheny (hereinafter collectively referred to as "the Mathenys") filed the instant law suit against Dr. Thompson and Fairmont General,[2] claiming they were negligent in the care and treatment they provided to Mr. Matheny due to their failure to diagnose the infection in his hip during his visit to the Fairmont General emergency department on January 12. A jury trial was ultimately held. On the last day of trial, before the close of the evidence, Dr. Thompson settled his portion of the Mathenys' claim.[3] Consequently, after hearing evidence of both Dr. Thompson's and Fairmont General's alleged negligence, the only question actually presented to the jury was that of Fairmont General's negligence.

The Mathenys' theory of negligence against Fairmont General was that, although the nursing staff had recorded Mr. Matheny's dramatic rise in temperature during his visit to the emergency department, they failed to alert Dr. Thompson of the same, thereby contributing to Dr. Thompson's fail-

1. During Mr. Matheny's visit to the Fairmont General emergency department on January 12, he was also seen by Dr. Jack S. Koay, an orthopedic surgeon who had previously treated Mr. Matheny for problems with his hip. Dr. Koay was initially named as a defendant to the instant suit, however, on October 4, 1999, the parties filed a stipulation of dismissal pursuant to Rule 41(a)(1)(ii) of the West Virginia Rules of Civil Procedure voluntarily dismissing Dr. Koay from this action.

2. See *supra* note 1.

3. Dr. Thompson had been sued individually and as an ostensible agent of the hospital. In their brief, the Mathenys explain that "[a]ll issues

dealing with the ostensible agency between Dr. Thompson and Fairmont General Hospital were also resolved by virtue of said settlement." Because the parties have raised no issue related to Fairmont General's potential liability under an ostensible agency theory, none will be addressed in this opinion. We do note, however, that in syllabus point three of *Woodrum v. Johnson*, 210 W.Va. 762, 559 S.E.2d 908 (2001), we held "[a] plaintiff's voluntary settlement with and release of a defendant who is primarily liable for the plaintiff's injury *does not* operate to release parties defendant whose liability is vicarious or derivative *based solely* upon their relationship with the settling defendant." (Emphasis added)

ure to diagnose Mr. Matheny's infection, which failure to diagnose resulted in the progression of the infection to the very serious abscess stage. During the circuit court's charge to the jury, the court correctly instructed the jury that Fairmont General could be found at fault if it determined that the hospital had caused Mr. Matheny's infection to progress to an abscess, but the court also instructed the jury that Fairmont General could be found at fault only if the jury determined that the hospital had *caused the infection,* as opposed to merely causing the progression of the pre-existing condition.[4] In addition, the circuit court instructed the jury that there is a presumption that a defendant in a medical malpractice action is not negligent.

Thereafter, during closing argument, the circuit court allowed counsel for Fairmont General to make an argument related to Mr. Matheny's responsibility for his condition, which allegedly resulted from his delay in seeking further medical treatment.[5] This argument was permitted notwithstanding the fact that the court had apparently refused to instruct the jury as to comparative fault.

After the case had been submitted to the jury, and the jury had deliberated for approximately one-and-one-half hours, the jury foreperson sent a note to the trial judge asking "[i]f we decide it was the doctor's fault (responsibility) is the hospital ultimately responsible?" After hearing arguments from the parties on how to address the question, the judge called the jury into the courtroom and instructed the jury as follows:

> I would indicate to you that there is a West Virginia case which holds that Emergency Room doctors are ostensible, and that's the word they use in the case, "are ostensible agents of the hospital." However, in this case, I think that there's a distinguishing feature, and that is in this case the doctor has already resolved his differences. In addition, you have been charged or instructed with regard to liability only as to the nurses and not the

doctor. Based upon that, the answer which I will give—make to your question is: No, if you decide the doctor's at fault, is the hospital ultimately responsible? The answer to that question is, no.

A short time later the jury returned a verdict in favor of Fairmont General. The Mathenys then filed a motion for a new trial, which was denied by the circuit court. It is the order denying their motion for a new trial that the Mathenys now appeal.

## II.

## STANDARD OF REVIEW

The instant case is before this Court on appeal from an order of the circuit court denying the Mathenys' motion for a new trial. Consequently, the circuit court's ruling concerning a new trial will be reviewed for an abuse of discretion, any underlying factual findings will be reviewed under a clearly erroneous standard, and any questions of law will be reviewed *de novo.*

> As a general proposition, we review a circuit court's rulings on a motion for a new trial under an abuse of discretion standard. *In re State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994).... Thus, in reviewing challenges to findings and rulings made by a circuit court, we apply a two-pronged deferential standard of review. We review the rulings of the circuit court concerning a new trial and its conclusion as to the existence of reversible error under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

*Tennant v. Marion Health Care Found., Inc.,* 194 W.Va. 97, 104, 459 S.E.2d 374, 381 (1995). Notwithstanding the deferential standard announced above, we will reverse a circuit court's order on a motion for new trial when appropriate.

---

4. The particular language of the challenged instructions is provided *infra* in connection with our discussion of the Mathenys' assigned errors relating to the instructions.

5. The challenged portion of Fairmont General's closing argument is quoted *infra* in connection with our discussion of the related issue.

" 'Although the ruling of a trial court in granting or denying a motion for a new trial is entitled to great respect and weight, the trial court's ruling will be reversed on appeal when it is clear that the trial court has acted under some misapprehension of the law or the evidence.' Syl. pt. 4, *Sanders v. Georgia–Pacific Corp.*, 159 W.Va. 621, 225 S.E.2d 218 (1976)." Syllabus point 1, *Andrews v. Reynolds Memorial Hospital, Inc.*, 201 W.Va. 624, 499 S.E.2d 846 (1997).

Syl. pt. 1, *Lively v. Rufus*, 207 W.Va. 436, 533 S.E.2d 662 (2000).

Additional standards for our review that are particular to the specific issues herein raised are discussed in connection with the issues to which they relate.

## III.

## DISCUSSION

### A. Instructions Given by the Circuit Court

The Mathenys argue that certain instructions given by the trial court were erroneous in two respects, first by instructing the jury that there is a presumption that the defendant hospital was not negligent, and next by instructing the jury that the Mathenys had to prove that the hospital *caused* the infection. After briefly considering the appropriate standard for our review of these particular issues, we will address each of these complaints in turn.

We have previously explained that

[t]he formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

Syl. pt. 6, *Tennant.* Furthermore,

"[i]t will be presumed that a trial court acted correctly in giving or in refusing to give instructions to the jury, unless it appears from the record in the case that the instructions were prejudicially erroneous or that the instructions refused were correct and should have been given." Syllabus Point 1, *State v. Turner*, 137 W.Va. 122, 70 S.E.2d 249 (1952).

Syl. pt. 1, *Moran v. Atha Trucking, Inc.*, 208 W.Va. 379, 540 S.E.2d 903 (1997). Although we have said that our review of a circuit court's giving of an instruction is for an abuse of discretion,

"our review of the legal propriety of the trial court's instructions is *de novo.*" *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996) (citation omitted). In Syllabus point 4 of *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995), we observed:

A trial court's instructions to the jury must be a correct statement of the law and supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not misle[d] by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

*Doe v. Wal–Mart Stores, Inc.*, 210 W.Va. 664, 672, 558 S.E.2d 663, 671 (2001). *See also* Syl. pt. 7, *Tennant* (" ' " " "Instructions must be read as a whole, and if, when so read, it is apparent they could not have misled the jury, the verdict will not be disturbed, through [sic] one of said instructions which is not a binding instruction may have been susceptible of a doubtful construction while standing alone." Syl. Pt. 3, *Lambert v. Great Atlantic & Pacific Tea Company*, 155 W.Va. 397, 184 S.E.2d 118 (1971).' Syllabus Point 2, *Roberts v. Stevens Clinic Hospital, Inc.*, 176 W.Va. 492, 345 S.E.2d 791 (1986)." Syllabus Point 3, *Lenox v. McCauley*, 188 W.Va. 203, 423

S.E.2d 606 (1992).' Syllabus Point 6, *Michael v. Sabado,* 192 W.Va. 585, 453 S.E.2d 419 (1994).").

We have also held, however, that " '[a]n erroneous instruction is presumed to be prejudicial and warrants a new trial unless it appears that the complaining party was not prejudice[d] by such instruction.' Syllabus Point 2, *Hollen v. Linger,* 151 W.Va. 255, 151 S.E.2d 330 (1966)." Syl. pt. 3, *Honaker v. Mahon,* 210 W.Va. 53, 552 S.E.2d 788 (2001).

**1. Presumption against negligence.** In its charge, the circuit court instructed the jury that: "In the absence of evidence to the contrary, it is to be presumed by you that the defendant performed each and every duty and obligation imposed upon it by law, and that it was not in any way negligent." The circuit court further instructed the jury that:

Negligence on the part of the defendant in this case is not to be presumed. The bringing of a lawsuit and filing of a complaint raises no presumption of negligence on the part of the defendant. On the contrary, *the presumption is that the defendant performed its whole duty toward plaintiffs, and for it to be found otherwise, the same must be shown by a preponderance of all the evidence in this case.*

(Emphasis added). In their motion for a new trial, the Mathenys argued that the foregoing instructions were erroneous. In its order denying the motion, the circuit court found that neither of these instructions was erroneous or prejudicial. The circuit court based its conclusion on language appearing in *Lambert v. Great Atl. & Pac. Tea Co., Inc.,* 155 W.Va. 397, 407, 184 S.E.2d 118, 124 (1971).

In *Lambert,* one of the issues raised on appeal by the plaintiff was that the trial court committed error in giving an instruction that indicated the defendant was presumed not to have been negligent. The presumption involved the operation of a motor vehicle by the defendant. This Court *did not* approve of the presumption instruction given in that case. Because the plaintiff failed to properly preserve the issue for appellate review, this Court declined to address the propriety of the instruction. Consequently, in the instant case, *Lambert* did not provide authority for the trial court to instruct the jury of a presumption of proper care by Fairmont General.

Before this Court, the Mathenys complain that the foregoing instructions created a double burden for them. Instead of beginning from a position where the parties were on an "even playing field," they first had to overcome a pre-conceived notion that Fairmont General did nothing wrong, and then show Fairmont General's negligence by a preponderance of the evidence. Fairmont General responds by also relying on this Court's decision in *Lambert.*

Other courts faced with similar presumption instructions have explained that, in reality, the type of "presumption" referred to in the instruction herein challenged does not comport with the traditional understanding of what actually is a "presumption." The Court of Appeals of Arizona has surveyed this area of the law and aptly explained:

If the quoted language is intended to create a presumption in favor of a defendant physician, it is a strange species of presumption indeed. It does not fit the typical description of a presumption in a civil case— that is, a rule that shifts the burden of producing evidence to the party against whom the presumption operates. *See* McCormick's Handbook of the Law of Evidence § 342 at 803 (2d ed., 1972). Rather, this "presumption" appears to do no more than merely restate the familiar rule that the plaintiff has the burden of proving the defendant negligent. *See Britton v. Hartshorn,* 113 Conn. 484, 156 A. 48 (1931). *But see, Richmond v. A.F. of L. Medical Service Plan of Philadelphia,* 421 Pa. 269, 218 A.2d 303 (1966) (presumption of physician's nonnegligence is distinct from plaintiff's burden of proof). In our opinion the case of *Board of Water Commissioners v. Robbins & Potter,* 82 Conn. 623, 74 A. 938 (1910) correctly analyzes the effect of a presumption in a situation similar to that here involved:

"Presumptions like that appealed to [that officials act honestly] have no probative force. They perform an office in

the absence of evidence, so that one who has cast upon him the burden of proof as to a given proposition may be enabled to sustain that burden upon the strength of a presumption without the presentation of proof. *When such a presumption is advanced in favor of one upon whom the burden of proof does not rest, it really adds nothing to the duty or burden of the other party, since the latter is already under the obligation to present proof in support of his contention, and the presumption only reiterates that obligation.*" (Emphasis added). 82 Conn. at 640, 74 A. at 945.

Since we find the presumption of a physician's due care to be merely the other side of the coin of the plaintiff's burden of proving negligence, it would have been preferable for the court to instruct the jury only on the burden of proof. *See Britton v. Hartshorn, supra; see also* McCormick, *supra,* § 345, at 829.

At least two cases from other jurisdictions appear to take the position that it is reversible error to instruct the jury on both the presumption of due care and the plaintiff's burden of proof where evidence has been introduced tending to show negligence of the defendant physician. In *Peacock v. Piper,* 81 Wash.2d 731, 504 P.2d 1124 (1973) and in *Richmond v. A.F. of L. Medical Service Plan of Philadelphia, supra,* it was held that instructing on the presumption could erroneously give the jury the impression that the plaintiff had to overcome a double burden to prove his case.

*Gaston v. Hunter,* 121 Ariz. 33, 55–56, 588 P.2d 326, 348–49 (1978) (footnote omitted). The *Gaston* court ultimately found that the lower court had erred in giving the instruction challenged in that case.[6] In reaching its conclusion, the *Gaston* court noted that the jury had, in addition to receiving instruction on the existence of a presumption, been advised that "negligence on the part of the defendant doctors is never presumed, that the mere fact of unsuccessful treatment does not give rise to a presumption of negligence, and (twice) that the plaintiffs must affirmatively prove negligence." 121 Ariz. at 56, 588 P.2d at 349. For these reasons, the *Gaston* court found the challenged instruction was

> an unnecessary and prejudicial reiteration of the plaintiff's burden of proving the defendant doctors to be negligent. When read in context with the other instructions, *see, e.g., Kauffman v. Schroeder,* 116 Ariz. 104, 568 P.2d 411 (1977), we find the "presumption" instruction confusing and likely to mislead the jury into believing that a malpractice plaintiff bears a double burden in proving her case.

*Gaston* at 56, 588 P.2d at 349.

The Supreme Court of Wyoming has also found error in the giving of an instruction stating that a physician was presumed to have acted with due care. *Wardell v. McMillan,* 844 P.2d 1052 (Wyo.1992).[7] After

---

6. The instruction challenged in *Gaston v. Hunter* stated:

> "You are instructed that Willard S. Hunter and Howard Johnston are presumed to possess the degree of skill and learning which is possessed by the average member of the medical profession in good standing, practicing in the specialty of orthopedics and they are presumed to apply that skill and learning with ordinary and reasonable care in the treatment of the plaintiff, Katherine Gaston.
> "If Dr. Hunter and/or Johnston did not possess the requisite skill and learning or if he or they did not apply it, he or they would be guilty of malpractice."

121 Ariz. 33, 55, 588 P.2d 326, 348 (1978).

7. The instruction the court rejected in *Wardell v. McMillan,* stated:

> The defendants rendered medical services to the plaintiff, Neal Wardell. Each defendant is entitled to the benefit of certain presumptions, and in this connection you are instructed as follows:
> 1. The law presumes that each defendant possessed reasonable knowledge and skill according to medical standards and that in the service undertaken and rendered by him, he discharged his full legal duty to the patient and exercised reasonable care, prudence and foresight in applying his skill and learning.
> 2. However, this presumption is disputable and may be overcome only by expert testimony which, taken together with other evidence, reasonably justifies a contrary conclusion.
> 3. This presumption continues throughout the trial unless and until the presumption is overcome.

844 P.2d 1052, 1063–64 (Wyo.1992). Although the *Wardell* court found this instruction was given in error, it was not required to determine whether the error warranted reversal of the case,

discussing *Gaston v. Hunter*, the *Wardell* court concluded:

> we view this alleged due-care presumption as being merely the flip side of the plaintiff's burden of proof in a medical malpractice case. As stated by [the defendant]: "The burden of proving 'that the nonexistence of the presumed fact [i.e., due care] is more probable than its existence,' is the same as the burden of proving defendants' negligence 'by a preponderance of the evidence.'" Consequently, once the jury has been adequately instructed on the plaintiff's burden of proof in a case, it is of no avail to further instruct the jury as to the alleged presumption of due care. To do so would serve only to confuse the jury. *See id.; Richmond v. A.F. of L. Medical Service Plan of Phil.*, 421 Pa. 269, 218 A.2d 303 (1966); and *Peacock v. Piper*, 81 Wash.2d 731, 504 P.2d 1124 (1973); *but see Crumbley v. Wyant*, 188 Ga.App. 227, 372 S.E.2d 497 (Ct.App.1988).

844 P.2d at 1064. *See also Riffey et al. v. Tonder et al.*, 36 Md.App. 633, 650, 375 A.2d 1138, 1147 (1977) (criticizing use of term "presumption" in "describing the burden of proof in medical malpractice actions," but finding no error in light of "the totality of the court's instructions with respect to the burden of proof.").[8]

■ Although our foregoing analysis has been directed toward medical malpractice cases, as that is the setting presented by the facts of this case, we note that this analysis is equally applicable to negligence cases falling outside the realm of medical malpractice. Accordingly, we hold that when the jury charge in a negligence action includes an instruction stating the plaintiff's burden of proof, it is reversible error for the court to also include in the charge an instruction in-

forming the jury of a presumption that the defendant has acted in accordance with the appropriate standard of care or duty. To the extent that our opinion in *Lambert v. Great Atlantic & Pacific Tea Company*, 155 W.Va. 397, 184 S.E.2d 118 (1971), suggests otherwise, that decision is expressly overruled.[9]

■ In the case *sub judice*, the circuit court not only gave two separate instructions advising the jury of a presumption that the defendant acted with the requisite standard of care and was not negligent, but also gave numerous instructions explaining the plaintiff's burden of proving the defendant's negligence by a preponderance of the evidence. Under these circumstances, we find the instructions, when considered as a whole, likely misled "the jury into believing that a malpractice plaintiff bears a double burden in proving [his or] her case." *Gaston v. Hunter*, 121 Ariz. 33, 56, 588 P.2d 326, 349. Consequently, we find prejudicial error warranting a new trial.

■ **2. Hospital *Caused* Infection.** The Mathenys' theory of the instant case was that the hospital was liable for failing to diagnose and treat an *existing* infection, thereby allowing the progression of the infection into a serious condition. The circuit court gave instructions to the jury that properly reflected this theory, but the court also instructed the jury that:

> [i]n order to prove that the defendant's negligence, if any, was the proximate cause of the plaintiffs' injuries, the plaintiffs must prove by a preponderance of the evidence that to a reasonable degree of medical probability the defendant's negli-

---

as it had already determined to reverse the case on other grounds. *Id.* at 1064.

**8.** The instruction analyzed in *Riffey et al. v. Tonder et al.* advised:

> "You are instructed that the law *presumes*, in the absence of evidence to the contrary, that a physician and a hospital has [sic] performed their respective duties with the required degree of care and skill. So that the plaintiffs must prove by the greater weight of the evidence that the defendants failed to exercise such care and skill as was required." (Emphasis added.)

36 Md.App. 633, 648, 375 A.2d 1138, 1146 (1977).

**9.** We point out, however, that we do recognize presumptions in certain limited circumstances. *See, e.g.*, Syl. pts. 1 and 2, *Pino v. Szuch*, 185 W.Va. 476, 408 S.E.2d 55 (1991) (establishing conclusive presumption that a child under the age of seven is incapable of negligence; and rebuttable presumption that children between the ages of seven and fourteen are incapable of negligence).

gence, if any, was the proximate cause of Ronald Matheny *incurring* an infection. (Emphasis added).

Even if you believe by a preponderance of the evidence that the defendant failed in its duty to Ronald Matheny, the plaintiffs can only recover if you further find by a preponderance of the evidence that such delay in diagnosis and treatment, if any, was a proximate cause of Ronald Matheny's subsequent *infection.* Therefore, even if you find from a preponderance of the evidence that the defendant failed in their [sic] duty to Ronald Matheny, and that such failure was negligence but that such negligence had nothing to do with Ronald Matheny's subsequent *infection,* you may find for the defendant and against the plaintiffs.

(Emphasis added). By giving the foregoing instructions, the Mathenys argue, the court, in essence, informed the jury that if the infection was not caused by the hospital, it could not be held liable for the Mathenys' damages. Fairmont General responds that using the term "infection" as opposed to "abscess" in the instructions was not inappropriate. So long as the remaining charge to the jury sufficiently explained the burden of proof and the standards to be applied, Fairmont General contends, there was no abuse of discretion and, therefore, no reversible error. Finally, Fairmont General asserts that any confusion the instructions may have caused the jury was clarified by the closing argument of counsel for the Mathenys. In its order denying the Mathenys' motion for a new trial, the circuit court concluded that utilizing the term "infection" rather than "abscess" in its jury instructions was simply a matter of semantics. The circuit court further stated that, when considering the evidence presented to the jury and the instructions as a whole, it was confident that the jury listened to the evidence and understood the parties' assertions.

We have reviewed the instructions as a whole, and find that the difference between the instructions indicating Fairmont General could be found liable only for causing Mr. Matheny's infection and the Mathenys' theory of the case to be more than a mere matter of semantics. Additionally, the Mathenys maintain, and Fairmont General does not dispute, that the jury heard repeated testimony during the course of the trial that Mr. Matheny arrived at Fairmont General with an *existing* infection. We believe that the conflicting instructions on whether Fairmont General was liable for *causing* an infection, or for failing to diagnose and treat an *existing* infection, were likely to cause confusion on the part of the jury, particularly when the evidence at trial clearly established that Mr. Matheny arrived at the hospital with an existing infection. Consequently, the instructions misstating the Mathenys' theory of the case were given in error. Because we have already determined that this case should be reversed, it is not necessary for us to decide whether the error was prejudicial or harmless.

### B. Closing Argument Not Contrary to Jury Instructions

■■ The Mathenys complain that the circuit court erred by allowing Fairmont General to make a comparative negligence argument during its closing in violation of the circuit court's "prior order prohibiting comparative fault and disallowing a comparative instruction proffered by counsel for Fairmont General." [10] Fairmont General, on the other hand, characterizes its closing as a proximate cause argument, not a comparative fault argument. In the complained of portion of Fairmont General's closing, counsel argued:

[COUNSEL FOR FAIRMONT GENERAL]: That brings up another interesting point. Where in our life do we have to start taking responsibility for our own health care? Ron went home and—

---

10. The Mathenys have failed to direct this Court to the circuit court's order prohibiting comparative fault in the record tendered on appeal. We have reviewed the record and have been unable to locate such an order. Once again, we admonish that " ' "[j]udges are not like pigs, hunting for truffles buried in briefs [or somewhere in the lower court's files]...' " *State v. Honaker,* 193 W.Va. 51, 56 n. 4, 454 S.E.2d 96, 101 n. 4 (1994) (quoting *Teague v. Bakker,* 35 F.3d 978, 985 n. 5 (4th Cir.1994))" *Easterling v. American Optical Corp.,* 207 W.Va. 123, 131 n. 10, 529 S.E.2d 588, 596 n. 10 (2000).

[COUNSEL FOR THE MATHENYS]: Your Honor, I'm going to object. This is getting into an area that the Court did not instruct on.

THE COURT: Overruled.

[COUNSEL FOR FAIRMONT GENERAL]: R o n went home, and he continued to have a fever. He had sweats that he didn't report on the 12th. He had other things that he didn't report as well. And in spite of admonitions and warnings and suggestions from his wife, his son, friends, and neighbors, and still being only five (5) minutes from the hospital or five (5) minutes from Doctor Koay. He didn't give anyone a chance to evaluate him again for five (5) days. And when they came back to the hospital, do you remember how he was treated? He was put into a room, he was admitted, and then he was cured because he made the decision to seek additional help. You have to be responsible for your own health care. You can't expect health care professionals to call or come out looking for you and say, "Hey, is there anything I can do to help? Is there anything I can do to help you? Can I help you?" Oh, no. You go to the doctor. Doctor's don't come to us. Maybe in the old days, they did, but not now.

I think the proximate cause of Ron's injuries and sickness and ultimate abscess was his own favorable decision to seek additional care was [sic] everybody around him was screaming to go back to the emergency room or call Doctor Koay, call Doctor Wolfe, call Dr. Morrison.

In its order denying the Mathenys' motion for a new trial, the circuit court reasoned:

The Court finds that the statements in [Fairmont General's] closing arguments did not rise to the level of assertions of comparative fault. The Court clearly instructed the jury that the law of the case was set forth in the "Charge To the Jury," not closing arguments, and that "nothing said or done by the lawyers [including closing arguments] ... is to be considered ... evidence of any fact." Thus, even if [Fairmont General's] closing arguments did assert that there was comparative fault on the plaintiffs' part, those assertions were, at most, harmless error and certainly were not prejudicial error. Consequently, the Court finds that [Fairmont General's] closing arguments did not prejudice the plaintiffs and did not result in manifest injustice.

In reviewing this issue, we are bound to affirm the circuit court's ruling unless we find the argument was prejudicial to the Mathenys, or resulted in manifest injustice.

"The discretion of the trial court in ruling on the propriety of argument by counsel before the jury will not be interfered with by the appellate court, unless it appears that the rights of the complaining party have been prejudiced, or that manifest injustice resulted therefrom." Syl. pt. 3, *State v. Boggs*, 103 W.Va. 641, 138 S.E. 321 (1927).

Syl. pt. 2, *Lacy v. CSX Transp., Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999). *Accord* Syl. pt. 9, *Foster v. Sakhai*, 210 W.Va. 716, 559 S.E.2d 53 (2001).

The circuit court and Fairmont General have both characterized the challenged portion of Fairmont General's closing argument as a proximate cause argument that did not rise to the level of comparative negligence. We agree. We have previously held that

[f]or a health care provider to establish the defense of comparative negligence, the health care provider must prove, with respect to the plaintiff's conduct after medical treatment is initiated, that: (1) the plaintiff owed himself a duty of care; (2) the plaintiff breached that duty; and (3) the breach was a proximate cause of the damages the plaintiff sustained.

Syl. pt. 5, *Rowe v. Sisters of Pallottine Missionary Soc.*, 211 W.Va. 16, 560 S.E.2d 491 (2001). Reviewing Fairmont General's argument in light of the elements of a comparative negligence defense, we find that it did not raise such an argument. Clearly, counsel was simply asserting that Mr. Matheny's failure to act on his worsening symptoms were the proximate cause of his infection manifesting into an abscess. Accordingly, because the closing was not prejudicial to the Mathe-

nys and did not result in manifest injustice, the circuit court's ruling is affirmed.

### C. Answering Question from Jury During Deliberations

■■■■■ The Mathenys urge one final argument. Because we have already determined that there was prejudicial error in this case requiring its reversal, we will be brief in our discussion of this issue. The Mathenys assert that the circuit court erred in the way it answered the question tendered by the jury during its deliberations. We disagree. It is well established that a circuit judge may answer a question posed by a jury during its deliberations. *See* Syl. pt. 6, *King v. Ferguson*, 198 W.Va. 307, 480 S.E.2d 516 (1996) ("'As a general rule, all communications between the trial judge and the jury, after the submission of the case, must take place in open court and in the presence of, or after notice to, the parties or their counsel.' Syl. Pt. 1, *Klesser v. Stone*, 157 W.Va. 332, 201 S.E.2d 269 (1973)."); Syl, *Freeman v. Freeman*, 71 W.Va. 303, 76 S.E. 657 (1912) ("It is not reversible error for the trial court to give a written instruction to the jury, at their request, which correctly propounds the law, after the case has been submitted to them, and they have deliberated on it for a time."), *overruled on other grounds by Meadows v. Meadows*, 196 W.Va. 56, 468 S.E.2d 309 (1996). We have thoroughly reviewed the question posed by the jury, and the answer provided by the circuit court, and we find no error.

### IV.

### CONCLUSION

For the reasons stated in the body of this opinion, we find that the Circuit Court of Marion County acted under a misapprehension of the law and abused its discretion in

denying the Mathenys' motion for a new trial. Consequently, we reverse this case and remand for a new trial not inconsistent with this opinion.

Affirmed in part, Reversed in part, and Remanded.

ALBRIGHT, Justice, concurring:

(Filed Dec. 11, 2002)

I concur to the majority's opinion based on the established principle of the rule of law, specifically, the fact that this Court's holding in *Woodrum v. Johnson*, 210 W.Va. 762, 559 S.E.2d 908 (2001), remains valid.[1] However, for all the reasons I stated at length in my dissent to *Woodrum*,[2] I believe that the settlement reached between Dr. Thompson, an ostensible agent of the hospital, and the plaintiffs, should have extinguished the plaintiffs' claims against the hospital.[3] This is because the plaintiffs' derivative claims against Fairmont General arose solely out of the agency relationship that resulted from the physician's employment by the hospital. As I previously stated in explaining my position: "[T]he release of a wrongdoing agent should foreclose further action against the innocent principal." 210 W.Va. at 781, 559 S.E.2d at 927.

Based on the foregoing, I respectfully concur.

---

1. In syllabus point three of *Woodrum*, this Court held that:

    A plaintiff's voluntary settlement with and release of a defendant who is primarily liable for the plaintiff's injury does not operate to release parties defendant whose liability is vicarious or derivative based solely upon their relationship with the settling defendant.
    210 W.Va. at 763, 559 S.E.2d at 909.

2. Justice Maynard joined me in that dissent.

3. Although the majority refused to address the issue of ostensible agency, (*see* opinion, note 3) on the theory that liability was not being asserted against Fairmont General under such a theory, the trial court's instruction to the jury on the issue of ostensible agency suggests that the issue may be raised on remand.